[Cite as *State v. Sullivan*, 2012-Ohio-5107.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 24585 |
| v. | : | T.C. NO. 10CR1662 |
| JAMISE L. SULLIVAN | : | (Criminal appeal from Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ___2nd___ day of ___November___, 2012.

· · · · · · · · · ·

CARLEY J. INGRAM, Atty. Reg. No. 0020084, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

CHRISTOPHER C. BAZELEY, Atty. Reg. No. 0077473, 5041 Glenway Avenue, Cincinnati, Ohio 45238
        Attorney for Defendant-Appellant

· · · · · · · · · ·

FROELICH, J.

{¶ 1}  Jamise Sullivan appeals from a judgment of the Montgomery County

Court of Common Pleas, which found her guilty following a bench trial of assault on a peace officer. At trial, Sullivan did not deny that she had committed the acts in question, but she asserted that she had not understood the wrongfulness of her conduct due to a mental disease or defect.

### Facts and Procedural History

{¶ 2} Sullivan's first appellate attorney filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), in which he asserted that he found no potentially meritorious issues for appellate review. However, in our independent review of the case, an issue came to our attention that was not, in our view, wholly frivolous; the issue related to the expert testimony offered at trial as to Sullivan's sanity at the time of the offense. Specifically, we noted that the defense expert, who opined that Sullivan had a mental defect at the time of the offense, and the State's rebuttal expert, who opined that Sullivan did not suffer from such a mental defect, had "relied extensively on evidence that was not contained in the record" in forming their opinions. Because this testimony seemed to violate Evid.R. 703, which requires that an expert base an opinion or inference on facts perceived by him or her or admitted into evidence, we appointed new counsel and ordered additional briefing on this issue and any other issue that the attorney identified. *State v. Sullivan*, 2d Dist. Montgomery No. 24585, Decision & Entry (Mar. 27, 2012). The matter is now ready for our consideration.

{¶ 3} The facts of the case, as set forth in our prior Decision & Entry, are as follows:

Sullivan's indictment was based on an incident that occurred on the

afternoon of May 23, 2010, at a convenience store and gas station in Dayton, Ohio. Sullivan repeatedly approached the counter asking for refunds for various items, none of which Sullivan had purchased and some of which the store did not sell. The clerk suspected that Sullivan was high, and her behavior was interfering with the clerk's ability to assist other customers. The clerk called the police, who responded to the store.

Officer Aaron Fraley testified that, when the police arrived, Sullivan's eyes were "half closed," she was swaying, staggering, and incoherent, she was supporting herself on the store counter, and she had "very repetitive, circular speech patterns." After the officers struggled to guide her outside, Sullivan started "twisting and wriggling." Officer Fraley "used a little leg sweep to put her on the ground so [he] could get her handcuffed." During their scuffle, Sullivan "clamped" her teeth into Fraley's forearm, biting him "for all she was worth" for approximately two minutes. Sullivan released her bite only after Fraley punched her in the face several times. Fraley and Sullivan were taken to [Miami Valley] hospital for treatment of their injuries.

Sullivan was indicted for assault on a peace officer in violation of R.C. 2903.13(A) and (C)(3), a felony of the fourth degree. She pled not guilty by reason of insanity; competency and sanity evaluations were conducted. Based on the competency evaluation and both counsels' stipulation to the qualifications of the writer and the content of the report,

Sullivan was found competent to stand trial. The issue of her sanity at the time of the offense remained in dispute.

At trial, Officer Fraley, his partner, and the store clerk testified about Sullivan's behavior on May 23, and Officer Fraley testified about his injury. The defense did not dispute the facts presented, but it did present the testimony of Dr. Massimo De Marchis, a psychologist, who opined that Sullivan "did not know the wrongfulness of her actions as a result of a serious mental disease" at the time of the offense. The State called a different psychologist, Dr. Kara Marciani, to rebut De Marchis's conclusion.

The trial court found Sullivan guilty of assault on a peace officer. It concluded that the State had clearly established the elements of the offense, and that Sullivan "simply failed to establish by the necessary preponderance of the evidence that she was legally insane * * * when the offense was committed." Sullivan was sentenced to five years of community control.

{¶ 4} Sullivan now raises two assignments of error, both of which relate to the expert testimony:

**The trial court committed plain error when it admitted the testimony of an expert witness that was based on evidence that was not in the record.**

**The trial court committed plain error when it admitted the testimony of the expert witnesses that was based on hearsay.**

{¶ 5} Sullivan contends that Dr. Marciani's testimony should not have been

admitted because it was based on facts not personally known to her and on hearsay. She concludes that, if Marciani's testimony had been excluded, the evidence would clearly have weighed in favor of a not guilty verdict.

### *Plain Error Standard of Review*

{¶ 6}     Sullivan did not object to testimony of the State's expert witness at trial. As a result, she has waived all but plain error. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 175; *State v. Ballew*, 76 Ohio St.3d 244, 254, 667 N.E.2d 369 (1996). The plain error rule is to be invoked only under exceptional circumstances in order to avoid a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 95, 372 N.E.2d 804 (1978). Plain error does not occur unless, but for the error, the outcome of the trial clearly would have been different. *Id.* at 97; Crim.R. 52(B).

### *The Psychological Testimony Offered at Trial*

{¶ 7}     For purposes of our discussion, a more detailed description of the testimony offered by the experts and of the trial court's conclusions will be helpful.

{¶ 8}     Dr. De Marchis, the defense expert, testified in the defense's case that he had personally examined Sullivan for one and one-half hours and had ordered additional psychological testing. He also relied on police reports describing the offense, records obtained from Miami Valley Hospital, and records from Eastway Behavioral Healthcare, where Sullivan was a patient. He obtained a history from Sullivan herself, who reported abuse of alcohol, marijuana, and powder cocaine in the past, but only moderate alcohol use recently; she stated that she had not used any legal or illegal substances on the date of the offense. De Marchis testified that Sullivan had been diagnosed as bipolar, had a history of

psychiatric hospitalizations, and was taking several medications at the time of the offense.

{¶ 9} De Marchis observed that Sullivan's treating physician had doubled her dosage of an anti-psychotic medication, Geodon, four days before Sullivan committed the assault, because Sullivan had reported an increase in auditory and visual hallucinations. He testified that, based on his research, Geodon could cause heat stroke-like symptoms if taken in "an exaggerated dose," such as drowsiness, slurred speech, shakiness, unusual body movements, strange behavior, disorientation, and anxiety. De Marchis reported that it was 82°F on the day of the offense, and that Sullivan recalled that she was overdressed for the weather and "sweaty." De Marchis also recounted Sullivan's statements that, at the time of the offense, she had believed that "she was going to be killed" by the police officers, the police reports' extensive evidence of disorientation and confusion, and the absence of any indication in the records that Sullivan had smelled of alcoholic beverages when she was arrested or at the hospital.

{¶ 10} In sum, De Marchis concluded that, at the time of the offense, Sullivan had not known the wrongfulness of her actions as a result of serious mental disease. Based on the evidence he had gathered and his observations, De Marchis opined that there were three possible explanations for Sullivan's behavior at the time of the offense: 1) she had a psychotic episode consistent with her bipolar disorder, 2) she suffered heat stroke, which caused disorientation and other symptoms and was triggered in part by her medication's tendency to inhibit sweating, or 3) she had an adverse reaction akin to an overdose due to the doubling of her medication in the days before the incident. De Marchis concluded that Sullivan's behavior and her delusion that the officers intended to hurt her were caused by

one of these three factors, and thus that a mental disease or defect had caused her illegal behavior.

{¶ 11} In rebuttal, the State called Dr. Marciani. Marciani evaluated Sullivan in person, spoke with her about her mental health history and substance abuse, reviewed the notes of her treating physician, and talked with her treating physician (a psychiatrist); Marciani also reviewed De Marchis's report, notes from Miami Valley Hospital, and the police report, and she spoke with a friend of Sullivan with whom Sullivan had spent time on the day of the offense. Based on all of this information, Marciani concluded that, on the date of the offense, Sullivan was sane, i.e., unimpaired by a mental disease or defect which made her unaware of the wrongfulness of her conduct.

{¶ 12} Marciani addressed each of De Marchis's theories in turn. With respect to the possibility of a psychotic episode, Marciani concluded that Sullivan was not "acutely ill" on the day of the offense and was "fully oriented." Marciani testified that, with psychiatric illnesses, changes "tend to be somewhat slow" and appear over days and weeks; a patient should not "become acutely psychotic within a few hours." Sullivan's friend reported to Marciani that Sullivan had behaved normally earlier in the day. Marciani also discounted the heat stroke theory based on her conversations with the treating psychiatrist and the Miami Valley Hospital records, noting that Sullivan's vital signs were "within the normal range, [which] was inconsistent with a heat stroke," and Sullivan was not treated for heat stroke. Finally, based in part on her conversations with the treating physician, Marciani concluded that it was "very unlikely" that Sullivan's behavior was a reaction to a change in medication, because the dosage change was not "dramatic" and normally would be

well-tolerated by a patient.

{¶ 13}    With respect to the testimonies of Dr. De Marchis and Dr. Marciani, the police reports, medical records, and conversations with others on which they relied were not admitted into evidence at trial, and neither party objected to the doctors' reliance on the unadmitted materials.

## The Admissibility of the Rebuttal Testimony

{¶ 14}    On appeal, Sullivan contends that Dr. Marciani's testimony should not have been admitted because she relied on hearsay statements from individuals who did not testify and reports and records that were not admitted into evidence.   She relies on Evid.R. 703 and Evid.R. 802.

{¶ 15}    Evid.R. 703 states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted into evidence at the hearing."   Sullivan contends that, because some of the information upon which Dr. Marciani relied was not based on evidence in the record or perceived by her, her opinion was "not credible."   We assume that Sullivan means to assert that the testimony was not competent, because she argues that it was inadmissible, not unbelievable.

{¶ 16}    The Ohio Supreme Court addressed this issue in *State v. Solomon*, 59 Ohio St.3d 124, 570 N.E.2d 1118 (1991).   In that case, the trial court had excluded expert testimony from two doctors regarding the defendant's sanity, because one had reviewed police reports and hospital records and the other had reviewed the reports of other doctors in forming his opinion.   Each of the doctors had based his opinion on his own evaluation of the defendant, along with the other materials available to him.   The supreme court found

that "where an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied." *Id*. at 126. In so holding, the supreme court distinguished *State v. Chapin*, 67 Ohio St.2d 437, 570 N.E.2d 1118 (1981), in which it appeared that the psychiatrists who were called to testify as experts had never personally examined the defendant. *See also State v. Hoover-Moore*, 10th Dist. Franklin No. 03AP-1186, 2004-Ohio-5541 (following *Solomon* in holding that, where a doctor has personally treated a patient, her testimony complies with Evid.R. 703's requirement that she base her opinion on "facts and data perceived" by her, even if she also bases her opinion, in part, on medical records that were not admitted into evidence).

{¶ 17} It is undisputed that Dr. Marciani personally conducted an evaluation of Sullivan's mental health. As such, on the authority of *Solomon*, her reliance on some other materials, which were not admitted at trial, in forming her opinion was not error and did not render her testimony incompetent.

{¶ 18} Sullivan also argues that Marciani's testimony was incompetent because it relied on hearsay, in violation of Evid.R. 802, namely the statements of other individuals who did not testify at trial, with whom Marciani had discussed the case personally or upon whose reports she relied. However, Sullivan's own expert, Dr. De Marchis, relied on the same types of evidence, and neither party objected at trial. Sullivan had the burden of proof on the affirmative defense of insanity. *State v. Rodriguez*, 12th Dist. Butler No. CA2008-07-162, 2009-Ohio-4460, ¶ 53. Because the trial court could not have reasonably excluded substantial parts of Marciani's testimony due to its reliance, in part, on hearsay, without also excluding much of De Marchis's testimony on the same basis, we find no

prejudice affecting the outcome of the case and, therefore, no plain error.

{¶ 19}    Finally, we note that the trial court expressly found that the testimony of De Marchis "was not credible."   Even if we were to conclude that Marciani's testimony was improper and should have been excluded, which we do not, the trial court would not have been compelled to credit De Marchis's testimony that Sullivan did not understand the wrongfulness of her conduct on the day of the assault.   Based on the trial court's conclusion that De Marchis was not credible, Sullivan's presumption that she would been acquitted if Marciani's testimony had been excluded is speculative, at best.

{¶ 20}    The assignments of error are overruled.

*Conclusion*

{¶ 21}   The judgment of the trial court will be affirmed.

. . . . . . . . . .

HALL, J. and CELEBREZZE, J., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

Carley J. Ingram
Christopher C. Bazeley
Hon. Michael L. Tucker