[Cite as *State v. Gall*, 2019-Ohio-4907.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    18CA011445 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| PATRICK GALL | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.    18CR098906 |

DECISION AND JOURNAL ENTRY

Dated: December 2, 2019

CALLAHAN, Presiding Judge.

{¶1} Appellant, Patrick Gall, appeals his convictions by the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} On July 6, 2018, W.F. was shot at close range in an overgrown area behind a business in Elyria. His injuries proved to be fatal. A series of security cameras captured the crime on video, and Mr. Gall was soon taken into custody along with two other men. Mr. Gall was charged with aggravated murder in violation of R.C. 2903.01(A), murder in violation of R.C. 2903.02(A) and (B), felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2), and tampering with evidence in violation of R.C. 2921.12(A)(1). Each charge was accompanied by a firearm specification. Prior to trial, Mr. Gall moved to dismiss all of the charges against him, arguing that he had not been brought to trial within the time period provided by R.C. 2945.71(C). The State informed the trial court that Mr. Gall was also being held on a holder issued from

Cuyahoga County. The trial court denied the motion to dismiss, but agreed to seat a jury within the ninety-day time period provided by R.C. 2945.71(E) nonetheless.

{¶3} The jury found Mr. Gall guilty of all of the charges and specifications. The trial court merged the murder and felonious assault charges with the aggravated murder charge for purposes of sentencing and sentenced Mr. Gall to life in prison for aggravated murder and two years in prison for tampering with evidence, to be served concurrently. The trial court also sentenced him to consecutive prison terms for the two accompanying firearm specifications. Mr. Gall appealed.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED IN DENYING MR. GALL'S MOTION TO DISMISS IN VIOLATION OF ORC 2945.71 AND ORC 2945.72 AS WELL AS THE UNITED STATES AND STATE OF OHIO CONSTITUTIONS AS MR. GALL'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED.

{¶4} In his first assignment of error, Mr. Gall argues that the trial court erred by denying his motion to dismiss for a violation of his right to a speedy trial. This Court does not agree.

{¶5} "When a trial court denies a motion to dismiss on speedy trial grounds, this Court reviews questions of law de novo, but considers whether the trial court's factual determinations are clearly erroneous." *State v. Burroughs*, 9th Dist. Lorain No. 14CA010595, 2016-Ohio-1139, ¶ 4, citing *State v. Downing*, 9th Dist. Summit No. 22012, 2004-Ohio-5952, ¶ 36. Under R.C. 2945.71(C)(2), an individual charged with a felony must be brought to trial within 270 days after arrest. R.C. 2945.71(E) provides that for purposes of calculating this time period, "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." This "triple-count" provision, however, only applies when the defendant is being

held solely on the charge at issue. *State v. McDonald*, 48 Ohio St.2d 66 (1976), paragraph one of the syllabus. When a defendant is also held under a parole holder, the triple-count provision does not apply because a parole violation is a separate offense. *State v. Brown*, 64 Ohio St.3d 476, 479 (1992); *Burroughs* at ¶ 4.

{¶6} Mr. Gall does not dispute that if the State had 270 days after his arrest in which to bring him to trial, his speedy trial rights were not violated. Consequently, he has argued that by operation of the triple-count provision of R.C. 2945.71(E), he was not brought to trial within ninety days.

{¶7} Mr. Gall's first argument is that the trial court erred by denying his motion to dismiss because the State failed to demonstrate the existence of a holder. When the parties appeared before the trial court to address the speedy trial issue, however, Mr. Gall did not dispute the existence of the holder from Cuyahoga County. Instead, his attorney acknowledged that a valid holder had been placed on Mr. Gall and informed the trial court that he had been aware of the holder since Mr. Gall was arraigned. Under these circumstances, this Court may presume that the facts support the trial court's decision to deny the motion to dismiss. *State v. Nixon*, 9th Dist. Lorain Nos. 00CA007638, 00CA007624, 2001 WL 422885, *9 (Apr. 25, 2001), citing *Brown* at 481. In addition, however, the State also stated the following on the record:

> The fact of the matter is, Your Honor, since July 12th, [Mr. Gall] has had a holder on him. It's been filed with the jail from the Cuyahoga County Sheriff's Department, which lists, "This warrant is good. Please place hold. Thank you."

> That was based on a juvenile case * * * with Judge Michael Ryan. Whereon, the 11th day of January, 2018, the defendant failed to appear. It says, "The Court finds that the following parties were present for hearing: [R.L.], community control officer; [A.H.], the GAL for the child. Notwithstanding receipt of the notice, the child has failed to appear upon the calling of the case without good cause shown. Therefore, it is ordered said matter is continued indefinitely for the arrest of the child."

> That was based on a juvenile case in which [Mr. Gall] has already been committed to a locked facility, not DYS, for a period of time. This is a review hearing. That warrant has been out since January 12th of 2018.

Under these circumstances, this Court does not agree that the State failed to demonstrate the existence of the holder for the record, and Mr. Gall's first argument is not well-taken.

{¶8} Mr. Gall's second argument is that a holder that originates from a juvenile court does not toll the triple-count provision for the reasons articulated by the Ohio Supreme Court in *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478. In *Sanchez*, the Supreme Court considered whether a detainer filed by the United States Bureau of Immigration and Customs Enforcement ("ICE") prevented application of the triple-count provision. The terms of the ICE detainer were not part of the record, so in considering this question, it was necessary for the Supreme Court to look to federal law and policy to determine the effect of ICE detainers in general. *See id.* at ¶ 12-19. Having surveyed these resources, the Supreme Court reasoned that because an ICE detainer indicates that ICE will seek to hold the subject in custody upon release from confinement but does not hold the subject in custody, the triple-count provision remains applicable. *Id.* at ¶ 16-17.

{¶9} In this case, the terms of the holder are reflected in the record. That holder subjected Mr. Gall to immediate arrest and detention while he was confined on the charges pending in this case. In other words, he was not held before trial solely on the charges at issue in this case, so the triple-count requirement of R.C. 2945.71(E) did not apply, and the State had 270 days after Mr. Gall's arrest in which to bring him to trial.

{¶10} Mr. Gall's final argument is that his trial did not commence on November 5, 2018, because the trial court seated a jury, then continued the trial for eight days before proceeding. This Court need not reach the merits of this argument because whether the

commencement of trial is measured from the date the jury was seated or from the date that trial resumed, it is undisputed that Mr. Gall was brought to trial well within 270 days after the date of his arrest, as required by R.C. 2945.71(C)(2).

{¶11}  Mr. Gall's first assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT VIOLATED MR. GALL'S DUE PROCESS RIGHTS AND HIS RIGHT TO A FAIR TRIAL WHEN IT PERMITTED AND INSTRUCTED TWO DEPUTIES POSITIONED BESIDE MR. GALL DURING THE TRIAL IN THE PRESENCE OF THE JURY ERODING THE PRESUMPTION OF INNOCENCE.

{¶12}  Mr. Gall's second assignment of error is that the trial court erred by  permitting the presence of two uniformed deputy sheriffs in the courtroom during trial.  This Court does not agree.

{¶13}  The presumption of innocence is a "basic component" of the fair trial that is guaranteed to criminal defendants by the Fourteenth Amendment. *Estelle v. Williams*, 425 U.S. 501, 503 (1976).  Courtroom practices that tend to erode the presumption of innocence, when "inherently prejudicial[,] * * * should be permitted only where justified by an essential state interest specific to each trial." *Holbrook v. Flynn*, 475 U.S. 560, 568-569 (1986).  On the other hand, some practices are not inherently prejudicial because they permit a "wider range of inferences that a juror might reasonably draw." *Id.* at 569.

{¶14}  The deployment of identifiable law enforcement officers in a courtroom during trial is one such practice.  *Id*.  In concluding that this practice is not inherently prejudicial, the United States Supreme Court reasoned:

> While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable.  Jurors may just as easily believe that the officers are there to guard

against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence. Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards. If they are placed at some distance from the accused, security officers may well be perceived more as elements of an impressive drama than as reminders of the defendant's special status. Our society has become inured to the presence of armed guards in most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm.

*Id.* The State's interest in deploying law enforcement officers in a courtroom is also "intimately related to the State's legitimate interest in maintaining custody during the proceedings." *Id*. at 572. Turning to the question at hand in *Holbrook*, the Court concluded that there was not an unacceptable risk of prejudice to the defendant posed by "four such officers quietly sitting in the first row of a courtroom's spectator section" during a trial of multiple defendants. *Id*. at 571. In that situation, the Court observed, "[f]our troopers are unlikely to have been taken as a sign of anything other than a normal official concern for the safety and order of the proceedings. Indeed, any juror who for some other reason believed defendants particularly dangerous might well have wondered why there were only four armed troopers to six defendants." *Id*.

{¶15} Even when courtroom security measures may pose a risk of eroding the presumption of innocence, the decision to implement them is entrusted to the discretion of the trial court. *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 79, citing *State v. Richey*, 64 Ohio St.3d 353, 358 (1992), abrogated on other grounds as noted in *State v. McGuire*, 80 Ohio St.3d 390, 402-403 (1997). Applying this standard, the Sixth District Court of Appeals has determined that the presence of a uniformed deputy sheriff in a courtroom does not deny a defendant a fair trial. *State v. Washington*, 6th Dist. Ottawa No. OT-12-032, 2014-Ohio-1008, ¶ 19-20. The Eighth District Court of Appeals has concluded that the placement of one deputy sheriff near a defendant did not deny the defendant a fair trial and, in another case, that a defendant was not denied a fair trial when he was escorted to the witness stand by uniformed

deputies. *State v. Gray*, 8th Dist. Cuyahoga No. 92303, 2010-Ohio-240, ¶ 47; *State v. Mitchell*, 8th Dist. Cuyahoga No. 56575, 1995 WL 527599, *7 (Sept. 7, 1995). Similarly, the Seventh District Court of Appeals has declined to reverse a conviction when the defendant argued that the presence of three deputy sheriffs in the courtroom denied him a fair trial "absen[t] * * * an affirmative demonstration of prejudice." *State v. Hill*, 7th Dist. Columbiana No. 90-C-56, 1992 WL 356182, *6-7 (Nov. 25, 1992).

{¶16} In this case, defense counsel objected to the presence of two deputy sheriffs in the courtroom during the trial, and the following exchange with the trial court occurred:

> [DEFENSE COUNSEL]: Your Honor, I'm concerned if we have law enforcement sitting behind the defendant, it gives the impression to the jury - - I don't like that. I mean, I don't think it's appropriate. He's presumed innocent.
>
> THE COURT: I understand that. Well, where would you prefer - - I mean, I'm going to have somebody on that half of the courtroom.
>
> [DEFENSE COUNSEL]: Okay.
>
> THE COURT: He's got to be in front of that rail to protect everybody here.
>
> [DEFENSE COUNSEL]: Okay. I'd just note my objection for the record. I'd like the record to indicate we have two Lorain County sheriff's deputies in the courtroom, and I understand that. One is seated right behind the defendant, and I believe that gives the jury the impression that my - - I think it - - it's challenging to the presumption of innocence, that gives the impression that he's being surrounded by law enforcement.
>
> THE COURT: The Court will just clarify that statement in that there are two deputies, one on each side of the courtroom; as the defendant is on one side, that's where one of the deputies is, and the other deputy is clear across the other side of the courtroom.
>
> [DEFENSE COUNSEL]: Agreed, Judge.

Based on this exchange, it appears that the trial court determined that two deputies were needed to provide security during Mr. Gall's trial and that they were not, as Mr. Gall now maintains, both positioned directly behind him. Instead, the record reflects that they stood on opposite sides

of the courtroom. With respect to the deputy who stood in close proximity to Mr. Gall, the trial court's comments indicate that the deputy was positioned in front of the barrier that separated the spectators from the rest of the courtroom and that in the trial court's opinion, the deputy's presence there was necessary to protect the participants in the trial. Under these circumstances, the presence and position of the deputies were "unlikely to have been taken as a sign of anything other than a normal official concern for the safety and order of the proceedings." *Holbrook* at 571. The trial court's decision to deploy the deputies in this way did not, therefore, deny Mr. Gall a fair trial.

{¶17} Mr. Gall's second assignment of error is overruled.

### ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT VIOLATED MR. GALL'S RIGHT TO PRESENT A DEFENSE UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION BY REFUSING TO GIVE THE JURY INSTRUCTIONS OF "RECKLESSLY" AND "NEGLIGENTLY."

{¶18} In his third assignment of error, Mr. Gall argues that the trial court erred by denying his request for jury instructions that included the definitions of negligent and reckless mental states. Specifically, he argues that although the culpable mental states at issue were purposely and knowingly, "the jury does not fully understand the mens rea that they are asked to decide[]" unless they are instructed on "all four * * * mental states." This Court disagrees.

{¶19} "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus; R.C. 2945.11 ("In charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict.") Although trial courts enjoy broad discretion in fashioning jury instructions, they must "present a correct, pertinent statement of the law that is appropriate to the

facts." *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 46, citing *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, ¶ 5, and *State v. Lessin*, 67 Ohio St.3d 487, 493 (1993). This Court reviews a trial court's decision not to provide a requested jury instruction for an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68 (1989). An abuse of discretion is present when a trial court's decision "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke v. Menke*, 9th Dist. Summit No. 27330, 2015-Ohio-2507, ¶ 8, quoting *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-24, 2015-Ohio-1999, ¶ 25.

{¶20} The State of Ohio suggests that because Mr. Gall did not formally object after the jury instruction was given, but before the jury retired, he has forfeited all but plain error in connection with this assignment of error. Under Crim.R. 30(A), it is true that "a party may not assign as error the * * * failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection." When a party requests a jury instruction and the record demonstrates that the trial court has been fully apprised of the law governing the disputed instruction, however, the failure to formally object does not forfeit the issue on appeal. *See Wolons* at paragraph one of the syllabus. Mr. Gall's attorney objected on the record after counsel discussed the instructions with the trial court in chambers. The substance of his objection is clear from the record, and both his attorney and the State of Ohio presented legal arguments to the trial court about the proposed instruction. We cannot conclude that Mr. Gall forfeited his objection under these circumstances.

{¶21} Although a trial court must instruct the jury regarding the culpable mental state required by the offenses charged against a defendant, there is no corresponding duty to provide comparative instructions defining other culpable mental states. *See State v. Howell*, 137 Ohio App.3d 804, 815-816 (11th Dist.2000). *See also State v. Vansickle*, 12th Dist. Fayette No.

CA2013-03-005, 2014-Ohio-1324, ¶ 30; *State v. Wood*, 2d Dist. Greene No. 2006 CA 1, 2007-Ohio-1027, ¶ 20-21. The intent behind a request for such instructions is "presumably to contrast [the culpable mental states] in the hope that the jury would find that [defendant's] conduct rose to the former, but not to the more stringent latter state of mind." *Howell* at 815. Although some courts have recognized that a comparative instruction regarding mental states could be helpful in limited circumstances, even those courts have declined to find error when a trial court's instruction on the culpable mental state required for commission of the charged offense is consistent with the statutory definition. *See State v. D.H.*, 169 Ohio App.3d 798, 206-Ohio-6953, ¶ 36 (10th Dist.); *Wood* at ¶ 21-22.

{¶22} In this case, the trial court instructed the jury regarding the relevant mental states by defining actions that are done purposely and knowingly in terms that tracked the language of the applicable statutes. In this respect, therefore, the trial court provided the jury with all of the necessary and relevant instructions to discharge its duty. *See Comen*, 50 Ohio St.3d 206 at paragraph two of the syllabus; R.C. 2945.11. The trial court did not abuse its discretion by omitting the definitions of reckless and negligent conduct from the jury instructions.

{¶23} Mr. Gall's third assignment of error is overruled.

### III.

{¶24} Mr. Gall's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
LYNNE S. CALLAHAN
FOR THE COURT

CARR, J.
SCHAFER, J.
CONCUR.

APPEARANCES:

GIOVANNA A. BREMKE, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and LINDSEY C. POPROCKI, Assistant Prosecuting Attorney, for Appellee.