[Cite as *State v. Walls*, 2020-Ohio-5446.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

State of Ohio                                         Court of Appeals No. E-19-040

        Appellee                              Trial Court No. 2014 CR 0284

v.

 Michael S. Walls                              **DECISION AND JUDGMENT**

        Appellant                              Decided:  November 25, 2020

* * * * *

Kevin J. Baxter, Erie County Prosecuting Attorney, and
Kristin R. Palmer, Assistant Prosecuting Attorney, for appellee.

Loretta Riddle, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Michael Walls, appeals the May 24, 2019 judgment of

the Erie County Court of Common Pleas which, following a jury trial finding him guilty

of multiple counts of rape (24 total) by force of minors under the ages of ten and 13, and

three counts of pandering obscenity involving a minor, sentenced him to multiple life

sentences.  For the reasons set forth below, we affirm.

{¶ 2} Appellant was indicted on July 11, 2014. He was charged with ten counts of rape of a victim less than ten years of age, violations of R.C. 2907.02(A)(1)(b); six counts of rape of a child less than 13 years of age, violations of R.C. 2907.02(A)(1)(b); eight counts of rape by force or threat of force, violations of R.C. 2907.02(A)(2); one count of pandering sexually oriented matter involving a minor, a violation of R.C. 2907.322(A)(1)[1]; and three counts of pandering obscenity involving a minor, violations of R.C. 2907.321(A)(3). Appellant was also indicted on two counts of interference with custody. Following a jury trial, appellant was convicted of all charges.

{¶ 3} On appeal, this court reversed the conviction and sentence finding that the testimony of child sexual abuse expert, Dr. Randall Schlievert, exceeded the scope of his written report, it was not offered to a reasonable degree of medical probability, and it was not timely disclosed under Crim.R. 16(K). *State v. Walls*, 2018-Ohio-329, 104 N.E.3d 280 (6th Dist.).

{¶ 4} Prior to the start of appellant's second trial, he entered guilty pleas to the interference with custody counts. On May 1, 2019, appellant's second trial commenced. The state's key witness was appellant's daughter, Me.W., who testified regarding the sexual abuse, perpetrated by appellant, that she and her younger brother, Mi.W., endured from a very young age through their teen years. Me.W. also testified that she had sexual relations with her older brother at appellant's direction.

---

[1] This charge was dismissed prior to trial.

{¶ 5} Child sexual abuse expert, Dr. Randall Schlievert, testified regarding typical patterns in child sexual abuse cases including grooming, delayed disclosure, and recantation and offered his opinion that the alleged sexual abuse did, in fact, occur. Various children services employees and law enforcement testified regarding their investigation and retrieval of two of appellant's children from Florida where appellant allegedly absconded.

{¶ 6} Appellant admitted that he failed to provide the children proper basic care and education. He testified that his oldest son was the abuser and that he had been trying to protect him. Appellant denied fleeing the state in order to avoid arrest; he stressed that he had simply taken his youngest two children on vacation to Florida.

{¶ 7} On May 6, 2019, appellant was again found guilty of all of the rape and pandering charges. This appeal followed with appellant raising seven assignments of error for our review:

Assignment of Error No. I: A trial court errs and abuses its discretion and prejudices the defendant when it denies his motions for mistrial.

Assignment of Error No. II: A trial court errs and abuses its discretion when the court tells a witness how to answer a question and the witness answers the question as instructed by the court.

3.

Assignment of Error No. III: A trial court errs and abuses its discretion and prejudices the defendant when it allows extensive testimony about charges that defendant plead guilty to prior to trial.

Assignment of Error No. IV: A trial court errs, abuses its discretion and prejudices the appellant when it allows testimony about the defendant's statement requesting an attorney and informing his children about their right to counsel and to remain silent and the children invoking those rights.

Assignment of Error No. V: A trial court errs and abuses its discretion and prejudices the defendant when it allows an expert to testify based on hearsay.

Assignment of Error No. VI: Michael Walls received constitutionally ineffective assistance of counsel.

Assignment of Error No. VII: The cumulative effect of the errors committed at trial denied appellant of a fair trial and requires reversal.

{¶ 8} In appellant's first assignment of error he contends that the trial court erred when it denied his request for a mistrial based upon certain jurors seeing him handcuffed and in shackles[2] and the victim's testimony regarding the sentence she would like imposed. "[A] trial court need not declare a mistrial unless 'the ends of justice so require and a fair trial is no longer possible.'" *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-

---

[2] We note that the record clearly indicates that appellant was handcuffed only, not in shackles.

4.

2961, 911 N.E.2d 242, ¶ 173, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991). The decision to grant or deny a mistrial is within the discretion of the trial court. *Id.*

{¶ 9} The issue of the observance by certain jurors of appellant handcuffed was brought to the attention of the court following a lunch break. According to the court reporter who was leading the jury out, the doors of the elevator were halfway closed and appellant was inside and had his hands cuffed in front of him. There was one male juror immediately behind her. Appellant contended that the doors were wide open and that several jurors observed him. Appellant's counsel requested a mistrial.

{¶ 10} The court and counsel reviewed the court surveillance video of the incident and noted that the doors were partially open as the jurors were led past the elevator. The court ordered individual voir dire of the six jurors observed in the video. Three of the jurors indicated that they saw appellant in handcuffs; they all stated that they would not be prejudiced by their observations. All jurors that were questioned were admonished not to discuss the questioning with the other jurors.

{¶ 11} Denying counsel's request for a mistrial, the court concluded that the incident was inadvertent and that those jurors who observed appellant were given a cautionary instruction. The court found that despite the incident, appellant could still receive a fair trial.

{¶ 12} Appellant acknowledges that "[i]n cases where a defendant is inadvertently witnessed by members of the jury in handcuffs or prison garb, there is a heavy burden on

5.

the defendant to justify a mistrial." *State v. James*, 6th Dist. Lucas No. L-86-171, 1988 WL 38861 (Apr. 22, 1988), citing *Dupont v. Hall*, 555 F.2d 15 (1st Cir.1977). Reviewing appellant's argument we find that this burden has not been met and prejudice not demonstrated.

{¶ 13} Appellant next complains about the court's refusal to grant a mistrial where Me.W., reading from a high school assignment to research a real felony case (she wrote about her father's case), stated: "But I would feel super bad if he got life sentence. I think he should get, at the most--." Counsel then asked to approach the bench and the court immediately struck Me.W.'s response. At a sidebar, defense counsel noted that testimony regarding the punishment is forbidden and a mistrial was warranted. The court then instructed the jury: "The jury is instructed to disregard anything as to punishment. That is not up to the jury or the witness. It's up to the Court, in the event there is a conviction, but that's only in the event there is a conviction, so."

{¶ 14} Upon review, we find that the trial court's admonishment was sufficient to overcome any potential prejudice. Jurors are presumed to follow the instructions of the court. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). The record reveals no evidence that the jury failed to follow the trial court's instructions.

{¶ 15} Based on the foregoing, we find that the trial court did not err in failing to grant a mistrial. Appellant's first assignment of error is not well-taken.

{¶ 16} Appellant's second assignment of error challenges the state's impeachment of its witness, Mi.W., with his prior trial testimony. Prior to trial the state filed a motion

6.

requesting that the state call Mi.W. as a court witness. The motion argued that the witness felt that he did not have to testify in the second trial and that he was aligned with the defendant. On April 16, 2019, the court issued a subpoena pursuant to Evid.R. 614(A). During Me.W.'s testimony, Mi.W. arrived at the courtroom in the morning though he was not scheduled to testify until the afternoon. Mi.W. was loud and belligerent. The court excused the jury in order to arrange to have Mi.W. testify out-of-order.

{¶ 17} Appellant now contends that the state failed to first show surprise and affirmative damage under Evid.R. 607(A), prior to impeaching Mi.W. on any prior inconsistent statements. The rule provides:

> (A) Who May Impeach. The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid.R. 801(D)(1)(a), 801(D)(2), or 803.

{¶ 18} Again, the witness was called pursuant to Evid.R. 614, which provides that "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." Defense counsel not only failed to object but agreed with the court's act of calling the witness. Counsel stated: "I did not object to the State wanting to bring him as a Court's witness. * * *. I have no

7.

objection. I understand why. He's going to potentially testify a lot differently than he did last time, but we've had a lot of issues with decorum."

{¶ 19} Review of the relevant testimony reveals that trial counsel's objection relates to the witness's outburst and the potential negative impact on the jury. Counsel stated: "[I]t looks like we coerced him to do this, okay? Why would the witness be mad this time about coming down if he testified last time and we've had no contact?"

{¶ 20} After discussion, the court determined that appellant suffered no prejudice from the outburst. As a precaution, the court issued a lengthy instruction to the jury which provided, in part:

> Whatever his actions were as he came into the Courtroom, don't read anything into that as to one side or the other. It had nothing to do with the actions of the prosecution. It had nothing to do with the actions of the defense, as far as I know, so that's – I want to instruct you to not hold that against either side, his actions, and you'll judge his credibility, or lack of it, by your own standards of factfinding, as we talked about before.

{¶ 21} Based on the foregoing, we find that the trial court did not err in calling Mi.W. as a witness and, based upon a showing that the witness would provide inconsistent testimony, the state was permitted to question Mi.W. about the prior statements. Further, following Mi.W.'s courtroom disturbance, the trial court properly instructed the jury in order to prevent prejudice to the defense. Appellant's second assignment of error is not well-taken.

8.

{¶ 22} In appellant's third assignment of error, he argues that he was unfairly prejudiced by testimony regarding two counts of interference with custody which he entered guilty pleas to prior to trial. Counsel objected to the testimony as being cumulative based on various stipulations and prejudicial by having appellant's former attorney testify against him. The state asserted that the fact appellant continued to flee despite the fact that his attorney contacted him, in addition to law enforcement and children services, was probative as to consciousness of guilt. The court then allowed the attorney to testify that a detective had contacted him and expressed a desire to have appellant return his children to Ohio; this desire was conveyed to appellant.

{¶ 23} We note that this court has previously ruled that the testimony of appellant's former attorney of the fact that a call was made, not the substance of the call, did not violate the attorney-client privilege and was not prejudicial. *Walls*, 2018-Ohio-329, 104 N.E.3d 280 at ¶ 62-68 (6th Dist.). Appellant now argues that the testimony was prejudicial and cumulative because he entered guilty pleas to the charges of interference with custody prior to trial and stipulated to the fact that he left the state with the children. Appellant claims that the "flight" did not necessarily relate to the sexual allegations as the emergency order of custody granted to Erie County Children Services (ECCS) was for lack of education claims relating to the children.

{¶ 24} The parties agree that portions of the disputed testimony were not objected to at trial, and must be reviewed for plain error under Crim.R. 52(B). An alleged error does not constitute plain error pursuant to Crim.R. 52(B) "unless, but for the error, the

9.

outcome of the trial clearly would have been otherwise." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 91 (1978), paragraph two of the syllabus.

{¶ 25} As correctly noted by the state, "an accused's flight, his resistance to arrest, acts of concealment, and related conduct are admissible evidence of consciousness of guilt, which is evidence of guilt itself." *State v. Moore*, 2013-Ohio-1435, 990 N.E.2d 625, ¶ 132 (7th Dist.), citing *State v. Williams*, 79 Ohio St.3d 1, 11, 679 N.E.2d 646 (1997).

{¶ 26} During trial, the ECCS intake investigator testified that the agency received allegations of educational neglect, isolation, and sexual abuse, and that there were guns in the home. Police were called for assistance and accompanied the agency to the home. At that time, appellant was informed of the allegations and, specifically, the sexual abuse allegations. Over objection, appellant's former attorney also testified that he spoke with Detective Nixon regarding appellant's return to Ohio and that appellant telephoned him during the same time frame.

{¶ 27} Appellant's knowledge of the sexual abuse allegations belies his contention that the evidence of his flight was probative as evidence relating only to the interference with custody charges. Further, appellant chose to remain in Florida and ignore a court order and repeated attempts to contact him to release the children to ECCS. Accordingly, we find that the court did not commit error or plain error when it allowed testimony regarding appellant's flight to Florida as evidence of guilt. Appellant's third assignment of error is not well-taken.

10.

{¶ 28} Appellant's fourth assignment of error contends that the allowance of testimony regarding appellant's invocation of his Sixth Amendment right to counsel, akin to asserting his right to remain silent, and his educating of his children to their counsel rights was prejudicial in that it was presented as evidence of appellant's guilt. Because appellant's counsel failed to object to this testimony we review for plain error. *Long*, 53 Ohio St.2d at paragraph two of the syllabus, 372 N.E.2d 91.

{¶ 29} An accused's refusal to speak with police and request for an attorney cannot be used "as substantive evidence of guilt" in violation of the Fifth Amendment privilege against self-incrimination. *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335.

{¶ 30} The statements at issue involve Detective Nixon. First, on the day that Detective Nixon accompanied ECCS to appellant's home, Nixon testified:

[W]e explained the home schooling issue and we have no record of them in any type of home schooling programs. He said he's doing it on his own. Then we expressed the sex abuse and we'd like to talk to the children, if we could, and he said, no, you can contact my lawyer, and that was the end of our conversation.

{¶ 31} Nixon further testified regarding his attempts to contact appellant following ECCS' award of temporary custody stating: "I called him and I actually spoke to him for a minute, that would have been I believe the 28th, and he said that I needed to contact his lawyer, who was – or Dick Grubbe, and that was the end of that conversation."

11.

{¶ 32} Appellant later took the stand in his own defense, thereby waiving his Fifth Amendment right. The state would have committed no Fifth Amendment violation, had it offered the disputed testimony in rebuttal to impeach appellant's trial testimony. We are aware that the *Leach* court's prohibition on the use of pre-arrest silence during the state's case in chief was predicated, in part, on the concern that it would cause a defendant to surrender his right not to testify and take the stand to explain his prior silence. *Id.* at ¶ 3. Appellant does not allege that he would not have testified but for Detective Nixon's testimony. Accordingly, we find that the admission of Detective Nixon's testimony during the state's case in chief was harmless error. *See State v. Thompson*, 33 Ohio St.3d 1, 4-5, 514 N.E.2d 407 (1987).

{¶ 33} Further, the fact that appellant had educated his children on their right to counsel and cultivated a general government distrust, does not directly implicate appellant's right to remain silent and it was offered to help explain the children's delayed reporting of the abuse. Appellant's fourth assignment of error is not well-taken.

{¶ 34} In appellant's fifth assignment of error he asserts that the trial court erred when it permitted an expert to testify based on hearsay. Appellant claims that the state's sexual abuse expert, Dr. Randall Schlievert, was improperly allowed to testify about an opinion he formed after review of various therapy notes and police reports which he did not author. Appellant stresses that under Evid.R. 803(8), police reports are not admissible unless offered by the defense. Again, because defense counsel did not object to the testimony we review for plain error.

12.

**{¶ 35}** Dr. Schlievert testified at trial that in forming his opinion, he relied on his 2013 interviews of Me.W. and Mi.W. and their 2016 trial testimony, counseling records, ECCS records, Lutheran Social Services records, and police reports from Sandusky County. This is reflected in his June 2018 report.

**{¶ 36}** Dr. Schlievert testified that Me.W.'s delayed disclosure of her sexual abuse stemmed in large part due to her fear of what would happen to appellant, her father, the fact that she did not know it was wrong, and that she had been isolated and did not have a trusted person to report the abuse to. As to grooming, or conditioning the victim to fully cooperate and minimize the risk of exposure, Dr. Schlievert stated that it involved progressive acts and a secrecy component. Dr. Schlievert further addressed the act of recanting reported abuse. Schlievert stated that it frequently occurs as a protective measure.

**{¶ 37}** Dr. Schlievert was also questioned regarding his medical opinion as to whether Me.W. was the victim of sexual abuse. Schlievert stated that based upon the medical information and information that he had reviewed she was "likely a victim of sexual abuse as she described."

**{¶ 38}** Appellant relies on Evid.R. 803(8) which states:

**Public Records and Reports**. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, *excluding, however, in*

13.

*criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant*, unless the sources of information or other circumstances indicate lack of trustworthiness. (Emphasis added.)

{¶ 39} We note, however, that Evid.R. 703 provides the basis for expert opinion testimony and states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Analyzing this section, the Supreme Court of Ohio has held:

[W]here an expert bases his opinion, in whole or in major part, on facts or data perceived by him, the requirement of Evid.R. 703 has been satisfied. It is important to note that Evid.R. 703 is written in the disjunctive. Opinions may be based on perceptions or facts or data admitted in evidence.

*State v. Solomon*, 59 Ohio St.3d 124, 126, 570 N.E.2d 1118 (1991). *See State v. Sullivan*, 2d Dist. Montgomery No. 24585, 2012-Ohio-5107, ¶ 16-17; *State v. Hodge*, 9th Dist. Lorain No. 98CA007056, 2000 WL 1533917 (Oct. 18, 2000).

{¶ 40} In the present matter, Dr. Schlievert testified that he based his opinion, in part, on direct observation of Me.W. and Mi.W. Accordingly, under Evid.R. 703 it was neither error nor plain error to admit his testimony. Appellant's fifth assignment of error is not well-taken.

{¶ 41} Appellant's sixth assignment of error argues that he received constitutionally ineffective assistance of trial counsel. Under this general claim,

14.

appellant raises several arguments. He first argues that counsel was ineffective for failing to object to the alleged errors raised above in appellant's second through fifth assignments of error. He claims that counsel failed to object to the fact that after Mi.W. caused a disturbance in the courtroom, an armed detective stood directly behind appellant with a hand on his chair and that an armed, uniformed deputy stood directly behind him. The counsel failed to object to the testimony of Dr. Schlievert about what Me.W. and Mi.W. told him. Appellant further argues error in counsel's act of "barely" cross-examining witnesses and his failure to "rehabilitate" witness Mi.W. Appellant further claims that counsel was ineffective for failing to request a mistrial where the prosecutor elicited testimony as to Dr. Schlievert's opinion that appellant was the perpetrator of Me.W.'s sexual abuse.

{¶ 42} Before addressing the merits of appellant's multiple alleged instances of ineffective assistance of counsel we note that to prevail on a claim of ineffective assistance of counsel, a defendant must prove two elements: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Proof of prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *State v. Bradley*, 42 Ohio St.3d 136,

538 N.E.2d 373 (1989), paragraph three of the syllabus. A defendant must establish both prongs of the standard to demonstrate ineffective assistance of counsel. *Strickland* at 687.

{¶ 43} The majority of appellant's claims relate to counsel's failure to object to the admission of certain evidence. An attorney's "failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel." *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). As discussed, the *Strickland* standard requires a criminal defendant to show that his attorney's conduct was unreasonable and that the defendant was prejudiced by the deficient performance. *Bradley*, at paragraphs two and three of the syllabus.

{¶ 44} Appellant first argues that trial counsel was ineffective by failing to object to the state's impeachment of its own witness, Mi.W. As discussed above in our analysis of appellant's second assignment of error the court, not the state, called Mi.W. as a witness; thus, counsel was not ineffective in failing to object.

{¶ 45} As to the third assignment of error, appellant argues that counsel should have objected to any testimony relating to the interference with custody charges that appellant entered guilty pleas to prior to trial. Counsel did object to the portions of the testimony and, in our resolution of the alleged error we found neither error nor plain error; we reject this argument.

16.

{¶ 46} Appellant's fourth assignment of error relates to the evidence of appellant asserting his right to an attorney and, de facto, his right to remain silent. We found that any error was harmless; we reject this argument.

{¶ 47} In his fifth assignment of error we examined whether Dr. Schlievert's testimony was improperly based on hearsay. We found that the testimony was properly admitted; thus, counsel was not ineffective by failing to object.

{¶ 48} Appellant's general assertions about appellant's counsel's failure to effectively cross-examine witnesses are rejected because the scope of cross-examination falls within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101, citing *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 45.

{¶ 49} Appellant next takes issue with counsel's failure to make a record of or object to the positioning of a plain clothes detective and a uniformed deputy during a portion of the trial. As noted by the state, assuming appellant's characterization is accurate, the hostile climate of the courtroom was largely brought on by the disturbance created by the arrival of witness Mi.W. Appellant was also agitated prior to and following his son's testimony stating to just "wipe your ass with me," indicating that he wished to fire his attorney, and then calling the proceedings a "kangaroo joke." The court indicated to appellant that it would not tolerate any more outbursts.

17.

{¶ 50} The decision to implement security measures in the courtroom is left to the sound discretion of the trial court which is in a position to consider the defendant's actions both inside and outside the courtroom, as well as his demeanor while court is in session. *State v. Gall*, 9th Dist. Lorain No. 18CA011445, 2019-Ohio-4907, ¶ 15, citing *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 79. The Supreme Court of the United States had opined:

> "To be sure, it is possible that the sight of a security force within the courtroom might under certain conditions 'create the impression in the minds of the jury that the defendant is dangerous or untrustworthy.' *Kennedy v. Caldwell*, 487 F.2d 101, 108 (CA6 1973), * * *. However, 'reason, principle, and common human experience', *Williams*, *supra*, 425 U.S., at 504, 95 S.Ct., at 1693, counsel against a presumption that any use of identifiable security guards in the courtroom is inherently prejudicial. * * *."

*Holbrook v. Flynn*, 475 U.S. 560, 569, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986).

{¶ 51} Upon review of the circumstances surrounding the placement of security personnel, we cannot say that the court abused its discretion or that appellant suffered prejudice. Thus, counsel was not ineffective in failing to object.

{¶ 52} The balance of appellant's argument relates to defense counsel's failure to object or request a mistrial as to the testimony of Dr. Schlievert. Appellant first argues that counsel should have objected to Dr. Schlievert's testimony as to what the children

18.

told him during interviews because it did not properly fall under the hearsay exception, Evid.R. 803(4), for statements made for the purposes of medical diagnosis or treatment.

{¶ 53} Appellant supports his argument by reliance on a federal civil litigation involving Dr. Schlievert where, denying the motion to dismiss, the court determined he was a state actor in a § 1983 action and, thus, could be liable for an allegedly false report implicating a child care worker for child abuse and the resulting criminal prosecution. *Gokor v. Schlievert*, 335 F.Supp.3d 972 (N.D. Ohio 2018).

{¶ 54} During cross-examination, appellant's counsel, attempting to impeach Dr. Schlievert's credibility, questioned him about the pending *Gokor* litigation. Schlievert stated that he authored a report that there was physical abuse involved in a child's injury; the report implicated Gokor. Gokor was charged but ultimately cleared of the allegations and commenced a malicious prosecution action. Schlievert expressed confidence in prevailing in the litigation.

{¶ 55} Appellant contends that if Schlievert is a state actor then his interviews of the children were not for medical diagnosis and treatment, but to aid in the prosecution of appellant. We note several key differences between this case and the federal action. In *Gokor*, Dr. Schlievert's employer had a contract with the children services' agency. Further in *Gokor*, unlike the present case, Dr. Schlievert never examined the alleged victim and failed to review investigative reports including the report of the child's mother who stated that he told her he fell while running. Finally, the court noted that the report

was the only evidence to substantiate abuse and was the sole basis relied upon by the grand jury in indicting Gokor.

{¶ 56} In the present matter, Dr. Schlievert testified that he conducted the interviews of the children for the purpose of medical diagnosis and treatment. In forming his opinion, Schlievert also reviewed reports from multiple sources. Further, the victim and her brother testified at trial and were subject to cross-examination. Based on the foregoing, we cannot say that counsel was ineffective in failing to object to Dr. Schlievert's testimony.

{¶ 57} We next address the claim that appellant's counsel wrongly failed to request a mistrial following Dr. Schlievert's testimony that he believed that Me.W. was the victim of sexual abuse and that appellant was the perpetrator. The exchange during trial is as follows:

Q: [D]o you have an opinion as to whether or not it's likely that [Me.W.] was the victim of sexual abuse?

A: I do have an opinion.

* * *

A: Yes. I believe that she diagnostically, from the medical information and that information I reviewed that I referenced earlier, that she was likely a victim of sexual abuse as she described.

Q: Okay. And then were you able to determine, by all that you've reviewed, as to the likelihood that her father, Michael Walls, was the perpetrator of that sexual abuse against her?

A: Certainly based on the statements to others and those prior statements she made that her dad was the person that she said did this, combined with the fact we had the delayed disclosure, we had the recantation, we have the grooming, all carried out most powerfully by a father figure, I believe that that is also supportive of the diagnosis and that now being able to look retrospectively ---

{¶ 58} Defense counsel then asked to approach the bench and objected to the testimony. The court agreed that it should be stricken. The state agreed to have Schlievert clarify his testimony and the questioning continued as follows:

Q: Okay. Doctor, there may have been a misstatement based upon the information that we have and we've had an opportunity to review. I don't think you were able to draw a conclusion as to who the perpetrator of any sex abuse against [Me.W.] would have been; is that correct? * * * I don't believe in your original reports, Exhibits 10 and 10A, that you drew any conclusions as to the perpetrator; is that correct?

A: That's correct. In the report, correct.

* * *

Q: And that would then be your opinion here today –

A: Yes.

Q: -- that you drew the conclusion that she was likely the victim of sexual abuse, but you're not able to determine by whom.

A: That's correct. I did not document by whom.

{¶ 59} Upon review, we agree that an expert may not testify as to matters that are properly left to the jury. We further agree that the prosecutor's questioning and Dr. Schlievert's statement that a "father figure" would be most "powerfully" able to carry out the abuse was improper. *See State v. Weaver*, 178 Ohio App.3d 504, 2008-Ohio-5022, 898 N.E.2d 1023, ¶ 120-131 (6th Dist.). We ultimately find, however, that counsel's failure to request a mistrial was not reversible error. Counsel objected to the error and the prosecutor questioned Dr. Schlievert clarifying his testimony that he did not determine the perpetrator of the abuse. Appellant's sixth assignment of error is not well-taken.

{¶ 60} In appellant's seventh and final assignment of error he contends that the cumulative effect of the multiple errors set forth above, even if they were harmless in isolation, deprived him of a fair trial. The two harmless errors we observed include appellant's statements regarding his right to counsel and Dr. Schlievert's statement regarding the perpetrator of the abuse. On review, the isolated errors do not rise to the level of denying appellant a fair trial. Thus, we find that there was no cumulative error.

22.

*State v. Leu*, 2019-Ohio-3404, 142 N.E.3d 164, ¶ 56 (6th Dist.), citing *Garner*, 74 Ohio St.3d at 64, 656 N.E.2d 623.  Appellant's seventh assignment of error is not well-taken.

{¶ 61} On consideration whereof, we find that the May 24, 2019 judgment of the Erie County Court of Common Pleas is affirmed.  Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J. _____

_____
JUDGE

Arlene Singer, J. _____

Thomas J. Osowik, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.