[Cite as *State v. Bertram*, 2022-Ohio-2488.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

STATE OF OHIO,                                        :

                              Plaintiff-Appellee,    :   Case No. 21CA3950

                    v.                             :

DONALD R. BERTRAM, JR.,      :   DECISION AND JUDGMENT ENTRY

        Defendant-Appellant.    :

_____

APPEARANCES:

Karyn Justice, Portsmouth, Ohio, for appellant.

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay S. Willis, Scioto County Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:7-15-22
ABELE, J.

    **{¶1}** This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. A jury found Donald R. Bertram, Jr., defendant below and appellant herein, guilty of burglary, a second-degree felony, in violation of R.C. 2911.12(A)(2).

    **{¶2}** Appellant assigns the following errors for review:

        FIRST ASSIGNMENT OF ERROR:

"APPELLANT'S CONVICTION IS AGAINST THE
MANIFEST WEIGHT AND SUFFICIENCY OF THE
EVIDENCE."

SECOND ASSIGNMENT OF ERROR:

"THE COURT ERRONEOUSLY OVERRULED APPELLANT'S
MOTION FOR ACQUITTAL."

THIRD ASSIGNMENT OF ERROR:

"THE COURT ERRONEOUSLY OVERRULED APPELLANT'S
MOTIONS FOR A MISTRIAL."

FOURTH ASSIGNMENT OF ERROR:

"APPELLANT'S SENTENCE IS CONTRARY TO LAW."

FIFTH ASSIGNMENT OF ERROR:

"APPELLANT'S TRIAL COUNSEL WAS INEFFECTIVE
IN HIS REPRESENTATION OF THE APPELLANT."

SIXTH ASSIGNMENT OF ERROR:

"THE CUMULATIVE EFFECT OF THESE ERRORS
DEPRIVED APPELLANT OF A FAIR TRIAL."

{¶3} While working outside of his residence during the afternoon of September 18, 2020, Timothy Huff observed appellant walk, uninvited, into Huff's open garage and take a leaf blower that Huff recently had purchased. A Scioto County Grand Jury returned an indictment that charged appellant with (1) burglary, in violation of R.C. 2911.12(A)(2) and 2911.12(D), and (2) breaking and entering, in violation of R.C. 2911.13(A) and 2911.13(C). Appellant entered not guilty pleas and the state later dismissed the breaking and entering charge.

{¶4} On May 17, 2021, the trial court held a jury trial. During voir dire, one juror (number eight) stated that she twice had been a burglary victim. The prosecutor asked the juror whether her experience impacted her ability to be fair and impartial, and the juror responded "I don't think [sic]." When appellant's trial counsel questioned the juror, he asked her to explain what happened and she stated that the person broke into her house and that "it was just traumatizing." Appellant's counsel then asked the juror whether she could "suspend judgment" until she hears all of the evidence, and she replied that "[i]t would be hard." The trial court also questioned the juror and asked if she could put her past experience "aside and base [her] decision as to this case on the evidence and the testimony" presented in this case. The juror responded: "Honestly, I don't think so."

{¶5} The trial court later asked appellant's counsel if he had any challenges for cause and counsel mentioned juror number eight:

> I'm wondering about that. It's – obviously someone who's been a victim of burglary twice * * * and I feel that this would probably be-well, I shouldn't be saying that, but as far as cause I – if I want to get rid of her I think I'd have to use peremptories.

Appellant's counsel then asked appellant whether he thought they should leave the juror on the jury and appellant stated: "I feel like she knows the-she knows what the charge is so she would be able to help my case in understanding that it's not a burglary." Counsel responded:

> Well, it's your life. You're relying on that. The other side of that is that she could be someone that – says listen, I've got a burglary, I don't think this guy was punished enough because burglar's don't get caught enough, if this guy's a burglar I want him punished.

Appellant then stated that he believed "she's capable" and "she'd be a good candidate." Appellant thus expressed his desire to leave her on the jury.

{¶6} The state's first witness, Portsmouth Police Officer Clayton Nickell, testified that on September 18, 2020 Huff reported that a white male had taken a Husqvarna leaf blower from Huff's garage. Huff had told the person "to stop several times." Authorities later identified the white male as appellant.

{¶7} Huff testified that on September 18, 2020 he was doing some yard work at his home when he heard a car with a loud muffler. Huff noticed the driver, appellant, drive slowly by Huff's house and look at his house, then they made eye contact. When Huff entered his house to retrieve his phone, appellant continued to drive to the end of the street.

{¶8}  At the end of the street, appellant turned around, drove back up the street and parked "to the side" of Huff's house.  Huff explained that appellant parked "more in front of the garage, but behind [Huff's] truck."  Huff indicated that appellant would not have been in direct sight of someone who looked out the front window.

{¶9}  After appellant parked, he exited his vehicle and walked around the front of the car.  Huff thought that appellant may have been approaching him.  Huff stated he "was just shocked" and "didn't know what was going on."  Huff explained appellant "had a smile on his * * * face, which threw [Huff] off."

{¶10} Appellant entered Huff's garage, although appellant did not move at a rapid pace and "that's what surprised" Huff.  Huff explained that he thought that, if appellant intended to steal something, "it was going to be * * * real quick."  Instead, Huff stated that appellant seemed "very cavalier" and had no "sense of urgency."

{¶11} Huff further testified that appellant's presence made him "nervous," because Huff "could tell he was under the influence of something.  His * * * behavior was just very off of a normal person.  His eyes were completely glassed over."  Appellant also "had open lesions all over his body."  Huff said

he was afraid that appellant might cause him physical harm.

{¶12} Huff further related that, once appellant entered the garage, appellant picked up the leaf blower and walked toward his car. Huff told appellant to stop and put down the leaf blower, but appellant placed the blower in the passenger side of his car and drove away.

{¶13} After Huff's testimony and the state rested, appellant moved for a Crim.R. 29(A) judgment of acquittal. Appellant argued that the state failed to present sufficient evidence to establish that appellant trespassed by force, stealth, or deception. The trial court, however, overruled appellant's motion. At that point, the defense rested.

{¶14} After the jury began to deliberate, the jury informed the trial court that it had reached an impasse. The court, however, instructed the jury to attempt to continue to deliberate and to reach a verdict. Later, the jury asked the court to replay Huff's testimony. After listening to a replay of Huff's testimony, the jury returned to deliberate and subsequently announced they had reached a verdict.

{¶15} When the trial court polled the jurors, one juror stated that, although she signed the verdict form, she did not agree with the verdict and felt as though she "was forced into pleading guilty [sic]." Appellant's counsel then asked the

court to declare a mistrial.  Appellant also asked the court to declare a mistrial based upon counsel's belief that the jury observe appellant in shackles.  The court, however, responded that the table "is equipped with modesty panels and skirting" and the court did not believe that the shackles "would have been visible to the jury during the limited time they were back in the courtroom."  Counsel stated that he thought appellant also "had the belt on and some handcuffs," but both the court and the prosecutor stated they did not believe that the jurors observed the restraints.

{¶16} The trial court then asked defense counsel if he wanted the court to give the jurors a curative instruction. Counsel, however, expressed concern that, if the jurors had not, in fact, noticed the restraints, the instruction would draw attention to it.  Counsel instead again requested the court grant a mistrial because counsel believed that any instruction would not be sufficient.  The court, however, stated: "I'm not sure there's anything to cure."

{¶17} At that juncture, the trial court brought the jury into the courtroom and instructed them to continue to deliberate.  Later, the jury returned a guilty verdict.

{¶18} On May 20, 2021, the trial court sentenced appellant.

The court noted that, at the time of the offense, appellant had been on post-release control.  Consequently, the court (1) terminated appellant's post-release control and ordered him to serve 491 days for the post-release control violation, (2) sentenced appellant to serve a minimum prison term of eight years to an "indefinite maximum prison term of up to" 12 years, and (3) ordered the sentences be served consecutively to one another.  This appeal followed.

I

{¶19} In his first assignment of error, appellant asserts that his burglary conviction (1) is against the manifest weight of the evidence, and (2) sufficient evidence does not support his conviction.  In particular, appellant contends that the evidence fails to show that he used force, stealth, or deception to enter the victim's garage.

{¶20} Initially, we observe that "sufficiency" and "manifest weight" present two distinct legal concepts. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 23 ("sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence"); *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), syllabus.  A claim of insufficient evidence invokes a due process concern and raises the question whether the evidence is

legally sufficient to support the verdict as a matter of law. *Thompkins*, 78 Ohio St.3d at 386.  When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt.  *Id.* at syllabus.  The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt.  *E.g., Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991).  Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction."  *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

{¶21} Thus, when reviewing a sufficiency of the evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution.  *E.g., State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996); *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993).  A reviewing court will not overturn a conviction on a sufficiency-of-the-evidence claim

unless reasonable minds could not reach the conclusion that the trier of fact did.  *State v. Tibbetts*, 92 Ohio St.3d 146, 162, 749 N.E.2d 226 (2001); *State v. Treesh*, 90 Ohio St.3d 460, 484, 739 N.E.2d 749 (2001).

{¶22} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence."  *Thompkins*, 78 Ohio St.3d at 387.  "The question to be answered when a manifest weight issue is raised is whether 'there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.'"  *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81, quoting *State v. Getsy*, 84 Ohio St.3d 180, 193–194, 702 N.E.2d 866 (1998), citing *State v. Eley*, 56 Ohio St.2d 169, 383 N.E.2d 132 (1978), syllabus.  A court that is considering a manifest weight challenge must "'review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.'"  *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 208, quoting *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 328.  The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  *State v. Issa*, 93

Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th

Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 31.  "'Because the

trier of fact sees and hears the witnesses and is particularly

competent to decide "whether, and to what extent, to credit the

testimony of particular witnesses," we must afford substantial

deference to its determinations of credibility.'"  *Barberton v.*

*Jenney*, 126 Ohio St.3d 5, 2010-Ohio-2420, 929 N.E.2d 1047, ¶ 20,

quoting *State v. Konya*, 2d Dist. Montgomery No. 21434, 2006-

Ohio-6312, ¶ 6, quoting *State v. Lawson*, 2d Dist. Montgomery No.

16288 (Aug. 22, 1997).  As the *Eastley* court explained:

> "'[I]n determining whether the judgment below is
> manifestly against the weight of the evidence, every
> reasonable intendment must be made in favor of the
> judgment and the finding of facts. * * *
>      If the evidence is susceptible of more than one
> construction, the reviewing court is bound to give it
> that interpretation which is consistent with the verdict
> and judgment, most favorable to sustaining the verdict
> and judgment.'"

*Id.* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10

Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio

Jurisprudence 3d, Appellate Review, Section 60, at 191–192

(1978).  Thus, an appellate court will leave the issues of

weight and credibility of the evidence to the fact finder, as

long as a rational basis exists in the record for its decision.

*State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012-Ohio-

1282, ¶ 24; *accord State v. Howard*, 4th Dist. Ross No. 07CA2948,

2007-Ohio-6331, ¶ 6 ("We will not intercede as long as the trier of fact has some factual and rational basis for its determination of credibility and weight.").

**{¶23}** Accordingly, if the prosecution presented substantial credible evidence upon which the trier of fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. *E.g., Eley; accord Eastley* at ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387, quoting Black's Law Dictionary 1594 (6th ed.1990) (judgment not against the manifest weight of evidence when "'"the greater amount of credible evidence"'" supports it). A court may reverse a judgment of conviction only if it appears that the fact-finder, when it resolved the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *accord McKelton* at ¶ 328. A reviewing court should find a conviction against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, quoting *Martin*, 20 Ohio App.3d at 175; *accord State v. Clinton*,

153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 166; *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

**{¶24}** In the case sub judice, R.C. 2911.12(A)(2) contains the essential elements of appellant's burglary offense:

> (A) No person, by force, stealth, or deception, shall do any of the following:
> * * * *
> (2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

**{¶25}** Appellant disputes whether the state presented sufficient evidence to show that he trespassed by force, stealth, or deception. "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "[A]ny effort physically exerted" satisfies the element of force. *State v. Johnson*, 2d Dist. Montgomery No. 26961, 2017-Ohio-5498, ¶ 21, quoting *State v. Snyder*, 192 Ohio App.3d 55, 2011-Ohio-175, 947 N.E.2d 1281, ¶ 18 (9th Dist.).

R.C. 2913.01(A) defines "deception" as

> knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as

to law, value, state of mind, or other objective or subjective fact.

**{¶26}** The Ohio Revised Code does not define "stealth." Courts have defined the term to mean "'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.'" *State v. Ward*, 85 Ohio App.3d 537, 540, 620 N.E.2d 168 (3d Dist.1993), quoting *State v. Lane*, 50 Ohio App.2d 41, 47, 4 O.O.3d 24, 361 N.E.2d 535 (10th Dist.1976).

**{¶27}** In the case before us, appellant contends that entering an open garage during daylight while the homeowner watches does not constitute trespass by force, stealth, or deception. To support his argument, appellant cites *State v. Pullen*, 2nd Dist. Greene No. 91CA33, 1992 WL 142271 (June 25, 1992), and *State v. Patton*, 2nd Dist. Clark No. 2011 CA 94, 2013-Ohio-961.

**{¶28}** The state, on the other hand, asserts that appellant acted with stealth or deception by driving past the victim's house, turning around, parking to the side, exiting the vehicle, and approaching the garage with a cavalier attitude. To support its position, the state cites *State v. Dowell*, 166 Ohio App.3d 773, 2006-Ohio-2296, 853 N.E.2d 354, (8th Dist.), and *State v. Biddlecom*, 8th Dist. Cuyahoga No. 76087, 2000 WL 354754 (Apr. 6,

2000).

{¶29} We begin by considering *Pullen* and *Patton*.  In *Pullen*, the defendant was convicted of burglary for stealing a gas can from an open garage.  Before stealing the gas can, the defendant parked his car in front of the homeowner's unopened garage door, exited the vehicle then entered the garage through a different, opened garage door.  The homeowner found the defendant exiting the garage with a gas can in hand.  After his conviction, the defendant appealed and argued that the evidence failed to establish that he trespassed by force, stealth, or deception.  The appellate court agreed:

> [The defendant] parked his car in front of the unopened door to [the victim's] garage, and entered [the victim's] garage through the open door, after [the victim] had entered his home.  The entry occurred in broad daylight.  [The victim] did not observe [the defendant] enter the garage.  There is no direct evidence of a secret, sly, or clandestine act to gain entrance, and in our judgment there is insufficient circumstantial evidence of a secret, sly, or clandestine act to gain entrance.

*Id.* at *2.  The court thus rejected the state's assertion that the defendant's entrance into the garage "was 'stealthy' in that he obviously believed no one was looking, and that he could enter and leave without being noticed."  *Id.* at *3.  The court stated that, even if the defendant "believed no one was looking, this does not establish, even by reasonable inference, that his

conduct in gaining entrance was secret, sly, or clandestine."
*Id.*  Instead, the court found it more significant that "the
incident occurred during daylight hours" and that the defendant
"parked his car outside the open garage."  *Id.*  The court thus
reversed the defendant's burglary conviction.

{¶30} In *State v. Patton*, 2nd Dist. Clark No. 2011 CA 94,
2013-Ohio-961, the defendant took a lawn mower from an open
garage and the homeowner's son observed the defendant walk away
from the house with the mower.  After the son "felt something
was wrong," he looked in the garage and found his father's lawn
mower missing.  *Id.* at ¶ 8.  The son then walked toward the
defendant and shouted, "Hey!"  *Id.*  The defendant then turned,
looked at the son, loaded the mower into the trunk of a vehicle
and fled.

{¶31} The defendant appealed his burglary conviction and
argued the state did not present sufficient evidence to
establish that he trespassed by force, stealth, or deception.
The appellate court agreed and noted that the open garage during
daylight hours and no one observed the defendant enter the
garage.  The court explained:

> There is no evidence—direct or circumstantial—that
> [the defendant] engaged in any secret, sly, or
> clandestine act to gain entrance to the [victims'] open
> garage, and nothing suggests that [the defendant]
> trespassed on the [victims'] property by force or

deception.

Id. at ¶ 15.  The court thus vacated the defendant's burglary conviction.

**{¶32}** In both *Pullen* and *Patton*, the courts concluded that the absence of evidence to show the manner in which the defendants entered the garages meant that the state failed to present sufficient evidence to establish that the defendants trespassed by force, stealth, or deception.  The courts reasoned that, without evidence to show how the defendants entered the garage, no evidence existed from which a factfinder could find that the defendants trespassed by force, stealth, or deception.

**{¶33}** When, however, the state presents some evidence to show that a defendant entered or remained in a garage using force, stealth, or deception, courts have found sufficient evidence to establish that the defendant trespassed by force, stealth, or deception.  For example, in *Dowell* the homeowner drove into his garage and remained in the car while he finished a phone call.  As he sat in the car, the homeowner observed a vehicle pull into his driveway then back out.  When the homeowner observed the defendant enter the garage and reach for a battery charger, the homeowner yelled and honked the horn.  At that point, the defendant ducked down on the other side of the car.  The homeowner became concerned that defendant remained in

the garage so he backed out and continued to yell at the defendant to leave.  When the defendant approached the homeowner's vehicle and asked to speak with him, the homeowner drove away and called the police.

{¶34} After the defendant's burglary conviction, he argued on appeal that the state did not present sufficient evidence to show he trespassed by force, stealth, or deception.  The appellate court, however, disagreed and determined that the defendant's conduct in "ducking down was a secret, sly, or clandestine act and that a rational jury could therefore conclude that defendant used stealth to remain in the garage without permission."  *Id.* at ¶ 20.  The court thus affirmed the defendant's burglary conviction.

{¶35} In *Biddlecom*, the defendant argued that the state failed to present sufficient evidence to establish that he trespassed by force, stealth, or deception.  In that case, the defendant took a bicycle from an open garage when it was dark outside and most household members asleep.  The appellate court concluded that entering an open garage "under cover of darkness" sufficiently established that the defendant trespassed by stealth.  *Id.* at *5.  The court also determined that "[a] defendant's demeanor and actions in *appearing* to have the permission of the owner to enter a premises would qualify as

deceptive conduct." *Id.* (emphasis sic).

{¶36} In *State v. Bolden*, 5th Dist. Stark No. 2002-CA-00235, 2002-Ohio-6976, the defendant walked up and down a street, glanced at garages and carried an item covered with a plastic bag. The defendant later entered an open garage and the homeowners observed him walk out of their garage. The defendant then approached the homeowners' vehicle, asked for help and also stated that "he had come to steal things from a garage," and explained that someone had paid him to steal items from the garage. The defendant then returned to the garage and used bolt cutters to attempt to cut through a lock attached to a lawnmower.

{¶37} After his burglary conviction, the defendant appealed and asserted that the state did not present sufficient evidence to establish that he trespassed by force, stealth, or deception. The appellate court disagreed, however, and noted that the evidence showed that the defendant did not simply walk into an open garage during daylight hours, but instead illustrated that the defendant had been looking for a garage he could easily break into and that he had concealed bolt cutters inside a plastic bag in order to avoid suspicion. The court determined that this evidence sufficiently demonstrated that the defendant acted with stealth.

{¶38} In the case at bar, after our review we believe that the state presented sufficient evidence that appellant trespassed into the victim's garage by stealth or deception. In contrast to *Pullen* and *Patton*, in the case before us there is no absence of evidence to show the manner in which appellant entered the garage. Instead, similar to *Dowell*, *Biddlecom*, and *Bolden*, the state presented evidence to show the manner in which appellant entered the victim's garage. Here, the evidence adduced at trial shows that appellant drove his vehicle past the victim's house, turned around, parked off to the side of the victim's garage, exited the vehicle and walked into the victim's garage. The victim also observed appellant approach and appellant smiled at the victim. Although the victim stated he was unsure about appellant's intentions, appellant's smile and cavalier attitude did not lead the victim to believe that appellant intended to steal from the garage. The victim explained that he thought appellant would have acted with more urgency if appellant intended to steal from the garage. Thus, the victim's testimony shows that appellant's attitude and demeanor deceived the victim into believing that appellant did not intend to trespass into the garage and steal the leaf blower. *See Biddlecom* at *5 ("[a] defendant's demeanor and actions in *appearing* to have the permission of the owner to

enter a premises would qualify as deceptive conduct."). Furthermore, appellant's conduct could be construed as sly behavior in an attempt to avoid the impression that he intended to steal the leaf blower. Therefore, we believe that in the case sub judice the state presented sufficient evidence to establish that appellant trespassed by stealth or deception.

{¶39} Furthermore, we believe that the evidence adduced at trial constitutes competent and credible evidence to establish, beyond a reasonable doubt, that appellant trespassed by stealth or deception. We are unable to conclude that appellant's conviction is against the manifest weight of the evidence and the jury lost its way and committed a manifest miscarriage of justice.

{¶40} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.

II

{¶41} In his second assignment of error, appellant asserts that the trial court erred by overruling his Crim.R. 29(A) motion for judgment of acquittal. Appellant claims that the state failed to present sufficient evidence to support his burglary conviction and the court should have granted his motion for judgment of acquittal.

{¶42} Crim.R. 29(A) states as follows:

> (A) Motion for Judgment of Acquittal. The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

"'A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence.'" *State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 164*,* quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus.

{¶43} As we stated in our discussion of appellant's first assignment of error, however, we believe that the state presented sufficient evidence to support appellant's burglary conviction. The trial court, therefore, did not err by overruling appellant's Crim.R. 29(A) motion for judgment of acquittal.

{¶44} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.

III

**{¶45}** In his third assignment of error, appellant asserts that the trial court abused its discretion by overruling his motion for a mistrial (1) after the jury indicated it reached an impasse, and (2) after the jury allegedly observed appellant's leg restraints, stun belt, and handcuffs.

**{¶46}** "A trial court must declare a mistrial only 'when the ends of justice so require and a fair trial is no longer possible.'" *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 198, quoting *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995); *accord State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 160 ("The granting of a mistrial is necessary only when a fair trial is no longer possible"). The decision whether to grant a mistrial lies in the trial court's discretion, and a reviewing court will not reverse the trial court's decision unless the court abused its discretion. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 92; *State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 42. An abuse of discretion is more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. *E.g., State v. Clinton*, 153 Ohio St.3d 422, 2017-Ohio-9423, 108 N.E.3d 1, ¶ 60 citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217,

219, 450 N.E.2d 1140 (1983).  An abuse of discretion includes a situation in which a trial court did not engage in a "'sound reasoning process.'"  *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).  Moreover, when reviewing for an abuse of discretion, appellate courts must not substitute their judgment for that of the trial court.  *E.g., State v. Grate*, 164 Ohio St.3d 9, 2020-Ohio-5584, 172 N.E.3d 8, ¶ 187; *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).  Moreover, to establish that a trial court abused its discretion by failing to grant a mistrial, a "defendant must demonstrate material prejudice."  *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 198.

{¶47} In the case sub judice, after our review we do not believe that the trial court's denial of appellant's motions for a mistrial constitute an abuse of discretion.  We first note that a trial court need not declare a mistrial when a juror declares during polling that the verdict is not the juror's own verdict.  Instead, R.C. 2945.77 requires the jury to deliberate further if a juror declares that the verdict is not his own.[1]

---

[1] R.C. 2945.77 provides:

Additionally, Crim.R. 31(D) allows a court to either direct further deliberations or discharge the jury, if "there is not unanimous concurrence" in the verdict.[2]  The statute and the rule prevent a court from accepting the verdict only if the jurors do not agree on the determination of guilt.  *See State v. Brumback*, 109 Ohio App.3d 65, 73, 671 N.E.2d 1064, (9th Dist.1996), quoting *State v. Worthy*, 10th Dist. Franklin No. 84AP-390, 1984 WL 5956, *2 (Oct. 25, 1984), quoting Annotation, Juror's Reluctant, Equivocal, or Conditional Assent to Verdict, 25 ALR 3d 1149, at 1151-1152 ("if the juror's '"reluctance to assent is so strong that it is extremely unlikely that he will ever voluntarily agree,"' it may discharge the jury and declare a mistrial.").

**{¶48}** In the case sub judice, when a juror initially indicated she did not agree with the verdict, the trial court

---

Before the verdict is accepted, the jury may be polled at the request of either the prosecuting attorney or the defendant. If one of the jurors upon being polled declares that said verdict is not his verdict, the jury must further deliberate upon the case.

[2] Crim.R. 31(D) states as follows:

When a verdict is returned and before it is accepted the jury shall be polled at the request of any party or upon the courts own motion.  If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged.

directed the jury to retire for further deliberation.  Nothing in the record suggests the trial court's decision to direct the jury to further deliberate rather than declaring a mistrial constitutes an abuse of discretion.  *State v. Williams*, 8th Dist. Cuyahoga No. 83423, 2004-Ohio-5592, ¶ 29 (the "decision to order the jury to continue deliberations is within the sound discretion of the trial court"); *e.g., State v. Brown*, 100 Ohio St.3d 51, 2003-Ohio-5059, 796 N.E.2d 506, ¶ 44-46 (court did not abuse its discretion by directing jurors to further deliberate and noting that juror had not "expressed further reservation about her verdict or about further deliberating"); *State v. Pippins*, 2020-Ohio-503, 151 N.E.3d 1150, ¶ 26 (10th Dist.); *State v. Edge*, 8th Dist. Cuyahoga No. 80919, 2003-Ohio-424, ¶ 20-21; *State v. Green*, 67 Ohio App.3d 72, 77-78, 585 N.E.2d 990 (8th Dist.1990).

**{¶49}** Appellant next argues that the trial court abused its discretion when it overruled his request for a mistrial after the jury allegedly observed him in restraints.  "'In cases where a defendant is inadvertently witnessed by members of the jury in handcuffs or prison garb, there is a heavy burden on the defendant to justify a mistrial.'"  *State v. Walls*, 6th Dist. Erie No. E-19-040, 2020-Ohio-5446, ¶ 12, quoting *State v. James*, 6th Dist. Lucas No. L-86-171, 1988 WL 38861 (Apr. 22, 1988),

citing *Dupont v. Hall*, 555 F.2d 15 (1st Cir. 1977). "When a jury's view of the defendant in restraints is 'brief, inadvertent, and outside the courtroom,' there is but a slight risk of prejudice." *State v. Daboni*, 4th Dist. Meigs No. 18CA3, 2018-Ohio-4155, ¶ 77, quoting *State v. Kidder*, 32 Ohio St.3d 279, 286, 513 N.E.2d 311 (1987); *see State v. Halsell*, 9th Dist. Summit No. 24464, 2009-Ohio-4166, ¶ 9 ("Even assuming that Defendant's handcuffs were visible during the break in proceedings and that jurors were in the immediate area, the brief and inadvertent encounter outside the courtroom caused minimal risk of prejudice to Defendant."); *State v. Flowers*, 9th Dist. Summit No. 25841, 2012-Ohio-3783, ¶ 37 (finding that trial court did not abuse its discretion by denying motion for mistrial when two jurors' view of the defendant in handcuffs "was extremely brief, inadvertent, and outside the courtroom"). "The ultimate question is the degree of prejudice, if any, which such brief exposure caused." *State v. Chitwood*, 83 Ohio App.3d 443, 448, 615 N.E.2d 257 (1st Dist.1992).

{¶50} In the case sub judice, after our review of the record we do not believe the record affirmatively shows that any jurors observed appellant in restraints. The trial court noted that counsel table had modesty panels and that skirting and the court did not believe that any juror observed appellant in restraints.

Consequently, because the record does not indicate that any juror actually observed appellant in restraints, appellant cannot demonstrate any prejudicial error. *See State v. Bonan*, 3rd Dist. Crawford No. 3-92-33, 1992 WL 389999, *1 (Dec. 24, 1992) (no prejudicial error when record failed to indicate "that any member of the jury ever observed [the defendant] wearing restraints"); *State v. Hastings*, 4th Dist. Ross No. 1301, 1986 WL 14899, *3 (Dec. 23, 1986) (defendant failed to establish prejudice when defendant "uncertain whether or not the jurors saw him through an open door being unshackled in a room adjacent to the courtroom"). Therefore, the trial court did not abuse its discretion by overruling appellant's motion for a mistrial.

{¶51} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

IV

{¶52} In his fourth assignment of error, appellant asserts that the trial court imposed a sentence contrary to law. In particular, appellant claims that his sentence "is not commensurate with the seriousness of the conduct constituting the offense" because his conduct does not justify eight years in prison and that the trial court did not state sufficient reasons to support its decision to impose the maximum sentence.

{¶53} When reviewing felony sentences, appellate courts

apply the standard of review outlined in R.C. 2953.08(G)(2).

*State v. Prater*, 4th Dist. Adams No. 18CA1069, 2019-Ohio-2745, ¶ 12, citing *State v. Graham*, 4th Dist. Adams No. 17CA1046, 2018-Ohio-1277, ¶ 13. Under R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
> (b) That the sentence is otherwise contrary to law.

**{¶54}** A defendant bears the burden to establish, by clear and convincing evidence, (1) that a sentence is either contrary to law or (2) that the record does not support the specified findings under R.C. 2929.13(B), R.C. 2929.13(D), R.C. 2929.14(B)(2)(e), 2929.14(C)(4), or R.C. 2929.20(I). *State v. Behrle*, 4th Dist. Adams No. 20CA1110, 2021-Ohio-1386, ¶ 48; *State v. Shankland*, 4th Dist. Washington Nos. 18CA11 and 18CA12, 2019-Ohio-404, ¶ 20. "[C]lear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such

certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶55}** We additionally observe that "[n]othing in R.C. 2953.08(G)(2) permits an appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 42. Furthermore, "an appellate court's determination that the record does not support a sentence does not equate to a determination that the sentence is 'otherwise contrary to law' as that term is used in R.C. 2953.08(G)(2)(b)." *Id.* at ¶ 32. Consequently, appellate courts cannot review a felony sentence when "the appellant's sole contention is that the trial court improperly considered the factors of R.C. 2929.11 or 2929.12 when fashioning that sentence." *State v. Stenson*, 6th Dist. Lucas No. L-20-1074, 2021-Ohio-2256, ¶ 9, citing *Jones* at ¶ 42; *accord State v. Orzechowski*, 6th Dist. Wood No. WD-20-029, 2021-Ohio-985, ¶ 13 ("In light of *Jones*, assigning error to the trial court's imposition of sentence as contrary to law based solely

on its consideration of R.C. 2929.11 and 2929.12 is no longer grounds for this court to find reversible error."); *State v. Loy*, 4th Dist. Washington No. 19CA21, 2021-Ohio-403, ¶ 30. We also observe that "neither R.C. 2929.11 nor 2929.12 requires a trial court to make any specific factual findings on the record." *Jones* at ¶ 20.

{¶56} In the case sub judice, appellant did not argue that the record fails to support the findings under R.C. 2929.13(B), R.C. 2929.13(D), R.C. 2929.14(B)(2)(e), 2929.14(C)(4), or R.C. 2929.20(I). Instead, appellant asserts that his "sentence is not commensurate with the seriousness of the conduct constituting the offense" and that the record does not support the court's findings under R.C. 2929.11. Appellant thus claims that his sentence is "contrary to law."

{¶57} R.C. 2953.02(G)(2) does not, however, allow this court to independently review the record to determine whether the trial court chose an appropriate sentence based on the R.C. 2929.11 factors. *See Jones, supra*; *State v. Hughes*, 4th Dist. Adams No. 21CA1127, 2021-Ohio-3127, ¶ 41 ("R.C. 2953.08(G)(2) does not give appellate courts broad authority to review sentences to determine if they are supported by the record"). Therefore, we are unable to consider whether we believe the record supports the trial court's decision to impose an eight-

year prison term.

{¶58} Furthermore, we find nothing in the record to suggest that the trial court's eight-year prison sentence is contrary to law. Rather, R.C. 2929.14(A)(2)(a) authorizes trial courts to impose an eight-year prison sentence for a second-degree felony such as burglary. Appellant did not point to any other statute, law, or rule that renders his sentence contrary to law. *See Jones* at ¶ 34 (noting that when the legislature enacted R.C. 2953.08, "legal dictionaries defined 'contrary to law' as 'in violation of statute or legal regulations at a given time,' e.g., Black's Law Dictionary 328 (6th Ed.1990)").

{¶59} Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

V

{¶60} In his fifth assignment of error, appellant asserts that his trial counsel did not provide effective assistance of counsel. In particular, appellant contends that trial counsel: (1) failed to challenge a juror who stated that she had twice been a burglary victim; (2) failed to present evidence; (3) made statements adverse to appellant; and (4) failed to request a curative instruction after the jury allegedly observed appellant's restraints.

A

{¶61} The Sixth Amendment to the United States Constitution, and Article I, Section 10 of the Ohio Constitution, provides that defendants in all criminal proceedings shall have the assistance of counsel for their defense. The United States Supreme Court has generally interpreted this provision to mean a criminal defendant is entitled to the "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Hinton v. Alabama*, 571 U.S. 263, 272, 134 S.Ct. 1081, 188 L.Ed.2d 1 (2014) (the Sixth Amendment right to counsel means "that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence").

{¶62} To establish constitutionally ineffective assistance of counsel, a defendant must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced the defense and deprived the defendant of a fair trial. *E.g., Strickland*, 466 U.S. at 687; *State v. Myers*, 154 Ohio St.3d 405, 2018-Ohio-1903, 114 N.E.3d 1138, ¶ 183; *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 85. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal*, 87 Ohio St.3d

378, 389, 721 N.E.2d 52 (2000) (a defendant's failure to satisfy one of the ineffective-assistance-of-counsel elements "negates a court's need to consider the other").

**{¶63}** The deficient performance part of an ineffectiveness claim "is necessarily linked to the practice and expectations of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Padilla v. Kentucky*, 559 U.S. 356, 366, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), quoting *Strickland*, 466 U.S. at 688; *accord Hinton*, 571 U.S. at 273. Prevailing professional norms dictate that "a lawyer must have 'full authority to manage the conduct of the trial.'" *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270, ¶ 24, quoting *Taylor v. Illinois*, 484 U.S. 400, 418, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).

**{¶64}** Furthermore, "'[i]n any case presenting an ineffectiveness claim, "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."'" *Hinton*, 571 U.S. at 273, quoting *Strickland*, 466 U.S. at 688. Accordingly, "[i]n order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d

810, ¶ 95 (citations omitted).

{¶65} Moreover, when considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* Additionally, "[a] properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor*, 4th Dist. Washington No. 07CA11, 2008-Ohio-482, ¶ 10, citing *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were "so serious" that counsel failed to function "as the 'counsel' guaranteed * * * by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *e.g., State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin*, 37 Ohio St.3d 153, 156, 524 N.E.2d 476 (1988).

{¶66} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that "'but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to

undermine the outcome.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 694; *e.g., State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus; *accord State v. Spaulding*, 151 Ohio St.3d 378, 2016-Ohio-8126, 89 N.E.3d 554, ¶ 91 (prejudice component requires a "but for" analysis). "'[T]he question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Hinton*, 571 U.S. at 275, quoting *Strickland*, 466 U.S. at 695. Furthermore, courts ordinarily may not simply presume the existence of prejudice but, instead, must require a defendant to affirmatively establish prejudice. *State v.* Clark, 4th Dist. Pike No. 02CA684, 2003-Ohio-1707, ¶ 22; *State v. Tucker*, 4th Dist. Ross No. 01CA2592 (Apr. 2, 2002); *see generally Roe v. Flores-Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2008) (prejudice may be presumed in limited contexts, none of which are relevant here).

{¶67} Additionally, we have repeatedly recognized that speculation is insufficient to establish the prejudice component of an ineffective assistance of counsel claim. *E.g., State v. Tabor*, 4th Dist. Jackson No. 16CA9, 2017-Ohio-8656, ¶ 34; *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 22;

*State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890,

¶ 25; *State v. Halley*, 4th Dist. Gallia No. 10CA13, 2012-Ohio-

1625, ¶ 25; *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-

Ohio-6191, ¶ 68; *accord State v. Powell*, 132 Ohio St.3d 233,

2012-Ohio-2577, 971 N.E.2d 865, ¶ 86 (purely speculative

argument cannot serve as the basis for ineffectiveness claim).

B

**{¶68}** Appellant argues that trial counsel failed to

challenge a juror when the juror stated she twice had been a

victim of burglary and that she was unsure whether she could put

her experience aside and consider only the evidence presented in

the case.

**{¶69}** Generally, trial counsel's decision regarding juror

selection constitutes a matter of trial strategy.  *State v.*

*Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 64.

> "Few decisions at trial are as subjective or prone
> to individual attorney strategy as juror voir dire,
> where decisions are often made on the basis of intangible
> factors."  *Miller v. Francis* (C.A.6, 2001), 269 F.3d
> 609, 620. "The selection of a jury is inevitably a call
> upon experience and intuition.  The trial lawyer must
> draw upon his own insights and empathetic abilities.
> Written records give us only shadows for measuring the
> quality of such efforts. * * * [T]he selection process
> is more an art than a science, and more about people
> than about rules." *Romero v. Lynaugh* (C.A.5, 1989), 884
> F.2d 871, 878.

*Id.*  For these reasons, appellate courts ordinarily will "not

second-guess trial strategy decisions such as those made by counsel during voir dire." *State v. Hall*, 11th Dist. Lake Nos. 2019-L-027 and 031, 2019-Ohio-4000, ¶ 28; *accord Mundt* at ¶ 63, quoting *State v. Mason*, 82 Ohio St.3d 144, 157, 694 N.E.2d 932 (1998) (courts "have consistently declined to 'second-guess trial strategy decisions' or impose 'hindsight views about how current counsel might have voir dired the jury differently'"). Additionally, "because the use of peremptory challenges is inherently subjective and intuitive, an appellate record will rarely disclose reversible incompetence in this process." *Mundt* at ¶ 83.

{¶70} In the case sub judice, appellant's counsel considered whether to challenge the juror and counsel explained his process:

> I'm wondering about that. It's-obviously someone who's been a victim of burglary twice-he's got justice though and I feel that this would probably be-well, I shouldn't be saying that, but as far as cause I-if I want to get rid of her I think I'd have to use peremptories.

Counsel then asked appellant if appellant thought that counsel should leave the juror on the jury. Appellant stated: "I feel like she knows the – she knows what the charge is so she would be able to help my case in understanding that it's not a burglary." Counsel responded:

> Well, it's your life. You're relying on that.
> The other side of that is that she could be someone
> that—say listen, I've got a burglary, I don't think
> this guy was punished enough because burglar's don't
> get caught enough, if this guy's a burglar I want him
> punished.

Appellant responded that he believed "she's capable" and that

"she'd be a good candidate." Appellant then stated his desire

to leave her on the jury.

**{¶71}** In view of the fact that appellant explicitly opted to

leave the juror on the jury, we are unable to conclude that

trial counsel, abiding by appellant's request, acted

unreasonably. Rather than choosing to remove the juror from the

panel, appellant specifically informed trial counsel that

appellant thought that the juror would "be a good candidate" and

stated that counsel should not remove the juror. Thus, in view

of this information appellant invited any error that may have

possibly occurred. The invited-error doctrine precludes a

litigant from "'tak[ing] advantage of an error which [the

litigant] invited or induced.'" *State v. Ford*, 158 Ohio St.3d

139, 2019-Ohio-4539, 140 N.E.3d 616, ¶ 279, quoting *Hal Artz

Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*,

28 Ohio St.3d 20, 502 N.E.2d 590 (1986), paragraph one of the

syllabus. The doctrine generally applies "'when a party has

asked the court to take some action later claimed to be

erroneous, or affirmatively consented to a procedure the trial judge proposed.'" *Id.*, quoting *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000). In the criminal context, the doctrine prevents a defendant from making "'an affirmative * * * decision at trial and then complain[ing] on appeal that the result of that decision constitutes reversible error.'" *State v. Doss*, 8th Dist. Cuyahoga No. 84433, 2005-Ohio-775, ¶ 7, quoting *United States v. Jernigan*, 341 F.3d 1273, 1290 (11th Cir. 2003); *accord State v. Brunner*, 4th Dist. Scioto No. 18CA3848, 2019-Ohio-3410, ¶ 15.

**{¶72}** Therefore, after our review of the record we do not believe that appellant established that trial counsel, when counsel acted in accordance with appellant's wishes, provided ineffective legal assistance.

C

**{¶73}** Appellant next claims that trial counsel's failure to present evidence constitutes ineffective assistance of counsel. In particular, appellant asserts that he advised the court during the final pretrial that appellant had evidence to present in his defense, but that his counsel failed to present any evidence whatsoever during trial.

**{¶74}** Our review of the transcript reveals that appellant did claim to have evidence to support a defense, and that the

trial court explicitly informed appellant that he would need to gather  and provide evidence to defense counsel.  However, nothing in the record shows that before trial, appellant gathered any evidence or provided evidence to counsel.

{¶75} Therefore, we are unable to conclude that trial counsel acted unreasonably by failing to present evidence that appellant claimed to possess, but did not provide to counsel.

D

{¶76} Appellant next asserts that trial counsel's adverse statements constitute ineffective performance.  Appellant complains that trial counsel made a statement during a bench conference that appellant was "mad that I didn't ask a thousand irrelevant questions."  Appellant asserts that counsel made another disparaging remark when he cross-examined the victim and asked "Well you're in a pretty safe area to leave [the garage door] open, wouldn't you say?"  Counsel then offered his remark that, "It turned out after this case not so."  Appellant contends that counsel's statements are inherently prejudicial.

{¶77} After our review, we do not agree with appellant that trial counsel's above-referenced comments constitute ineffective assistance of counsel.  Even if we may agree that the statements could be viewed as professionally unreasonable, appellant cannot demonstrate that the statements affected the outcome of the

proceedings.  Nothing suggests that the jury returned a guilty verdict based upon counsel's remark to the victim about the area being safe or unsafe.  Moreover, the other comment occurred during a bench conference and appellant did not establish that the jury heard the comment, or that the comment had any effect on the outcome of the proceedings.

E

{¶78} Appellant also asserts that trial counsel's failure to ask the court to give the jury a curative instruction after the jury allegedly observed appellant in restraints constitutes ineffective assistance of counsel.  We do not agree.

{¶79} After trial counsel raised the concern that the jurors observed appellant in restraints, the trial court asked counsel if he wanted the court to give the jury a curative instruction. Counsel, however, expressed concern that if the jurors had not noticed the restraints, as the court and prosecutor believed, then an instruction may draw attention to the restraints. Counsel thus stated that any curative instruction would not be sufficient (and he would rather the court grant a mistrial).

{¶80} After our review of the record, we believe that counsel made a strategic decision not to request a curative instruction.  If the jury did not actually notice the restraints, a curative instruction could draw unnecessary

attention to the restraints.  Therefore, counsel could have reasonably decided that better strategy dictated foregoing a curative instruction rather than unnecessarily drawing attention to the restraints.

{¶81} Furthermore, even if counsel acted unreasonably by failing to ask the court to issue a curative instruction, appellant cannot establish that counsel's decision affected the outcome of the proceedings.  As we noted earlier in our decision, the record does not clearly reveal that the jury actually observed appellant in restraints.  The trial court noted that the table had a modesty panel and the court did not believe the jury observed appellant in restraints.  In light of this uncertainty, appellant cannot establish prejudice.  *See Hastings*, supra, at *3 (defendant failed to establish prejudice when defendant "uncertain whether or not the jurors saw him through an open door being unshackled in a room adjacent to the courtroom").  Therefore, based upon the foregoing reasons, we do not believe that appellant's trial counsel failed to provide appellant effective assistance of counsel.

{¶82} Accordingly, based upon the foregoing reasons, we overrule appellant's fifth assignment of error.

VI

{¶83} In his sixth assignment of error, appellant asserts

that the cumulative effect of the errors that occurred during the trial court proceedings deprived him of his right to a fair trial.

**{¶84}** The cumulative error doctrine states that a conviction will be reversed if the cumulative effect of all the errors in a trial deprive a defendant of the constitutional right to a fair trial, even though each alleged instance of error may not individually constitute cause for reversal. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 223, citing *State v. DeMarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus*.*

**{¶85}** In the case sub judice, however, we have not found merit to appellant's assignments of error. Thus, the cumulative error doctrine does not apply under these circumstances. *State v. Worley*, 164 Ohio St.3d 589, 2021-Ohio-2207, 174 N.E.3d 754, ¶ 143, citing *Powell* at ¶ 223. Therefore, appellant's sixth assignment of error is without merit.

**{¶86}** Accordingly, based upon the foregoing reasons, we overrule appellant's sixth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that

appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of 60 days upon the bail previously posted.  The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court.  The stay as herein continued will terminate at the expiration of the 60-day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the 45-day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court.  Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

_____
BY: Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.