[Cite as *State v. Edwards*, 2023-Ohio-4248.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SALAH EDWARDS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 23 CO 0014**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2022 CR 236

**BEFORE:**
Mark A. Hanni, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Vito J. Abruzzino*, Columbiana County Prosecutor, and *Atty. Shelley M. Pratt*, Assistant Prosecuting Attorney, Columbiana County Prosecutor's Office*,* for Plaintiff-Appellee and

*Atty. Rhonda G. Santha*, for Defendant-Appellant.

Dated: November 22, 2023

**HANNI, J.**

{¶1} Defendant-Appellant, Salah Edwards, appeals from a Columbiana County Common Pleas Court judgment convicting him of burglary following a jury trial.

{¶2} On April 11, 2022, Appellant went to Mary Jo Taylor's apartment with Legacy Dubose and another man. Appellant was looking for Mary Jo's daughter, Taralyn, because Appellant believed Taralyn had stolen drugs from him. Legacy was friends with Taralyn and she knew both Mary Jo and Mary Jo's other daughter Susie Jo. Legacy knocked on the apartment door. Susie Jo looked through the window on the door and saw only Legacy standing at the entrance, so Susie Jo opened the door to let Legacy in. When Susie Jo opened the door, Appellant walked in behind Legacy. Once inside, Appellant threatened Mary Jo and appeared to be concealing a gun. After learning that Taralyn was not home, Appellant, Legacy, and the other man left the apartment. Mary Jo called the police to make a report after they left.

{¶3} Two days later, Mary Jo spotted Appellant and Legacy outside of her apartment. She called 911. The police responded. They arrested Appellant and found a firearm in his car.

{¶4} On June 8, 2022, a Columbiana County Grand Jury indicted Appellant on one count of burglary, a second-degree felony in violation of R.C. 2911.12(A)(1); one count of improperly handling a firearm in a motor vehicle, a fourth-degree felony in violation of R.C. 2923.16(B); and one count of obstructing official business, a second-degree misdemeanor in violation of R.C. 2921.31(A). Appellant initially entered a not guilty plea to all counts.

{¶5} On February 21, 2023, Appellant changed his plea to guilty on the improperly handling a firearm in a motor vehicle and obstructing official business counts. The matter then proceeded to a jury trial on the burglary count. The jury found Appellant guilty as charged.

{¶6} The trial court subsequently held a sentencing hearing on the burglary conviction along with the other convictions. It sentenced Appellant to an indefinite prison term of three to four-and-a-half years for burglary. For improperly handling a firearm in a motor vehicle, the court sentenced Appellant to a prison term of 12 months. And for

obstructing official business, the court sentenced Appellant to 90 days in jail. The court ordered Appellant to serve his sentences concurrently for a total sentence of three to four-and-a-half years.

{¶7} Appellant filed a timely notice of appeal on February 28, 2023. He now raises a single assignment of error for our review.

{¶8} Appellant's sole assignment of error states:

EVIDENCE FOR A BURGLARY CONVICTION IN THIS CASE WAS INSUFFICIENT AS A MATTER OF LAW.

{¶9} Appellant argues the evidence was insufficient to support his conviction. He argues that Plaintiff-Appellee, the State of Ohio, failed to introduce any evidence that he acted with stealth or deception, as is required to prove a burglary. He points out that he walked through an open door behind a friend of a resident of the house. Mary Jo came out of her bedroom to speak with Appellant to find out what he wanted and did not ask him to leave. Appellant and the others then left on their own.

{¶10} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). Sufficiency is a test of adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id*. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113. When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *State v. Thorn*, 7th Dist. Belmont Nos. 16 BE 0054, 17 BE 0013, 2018-Ohio-1028, ¶ 34, citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991) (superseded by state constitutional amendment on other grounds).

{¶11} When reviewing a sufficiency challenge, the court does not evaluate witness credibility. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79. Instead, the court looks at whether the evidence is sufficient if believed. *Id.* at ¶ 82.

{¶12} The jury convicted Appellant of burglary in violation of R.C. 2911.12(A)(1), which provides: "No person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure * * *, when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense[.]"

{¶13} We must consider the State's evidence to determine if it goes to each element of burglary.

{¶14} Mary Jo was the State's first witness. She testified that in April 2022, she lived in an apartment in Salem with her boyfriend, Johnny, her two adult daughters, Susie Jo and Taralyn, and her adult son, Trevor. (Tr. 160-161). Mary Jo stated that on April 11, 2022, at approximately 2:30 p.m., she had been asleep in her bedroom when Susie Jo woke her up to tell her there was a man at the apartment looking for Taralyn. (Tr. 164). Mary Jo saw Appellant looking into her bedroom. (Tr. 164-165). Mary Jo got out of bed and walked out of her room to find Susie Jo, Appellant, Legacy, and another man. (Tr. 166). Mary Jo knew Legacy because she was friends with Taralyn. (Tr. 166).

{¶15} According to Mary Jo, Appellant told her that Taralyn had stolen $1,000 worth of drugs from him. (Tr. 167). Appellant asked if Taralyn was home. (Tr. 168). Mary Jo told him Taralyn was not home at the time. (Tr. 168). He asked when Taralyn would be back. (Tr. 168). Mary Jo responded that she did not know. (Tr. 168). Appellant then "explained to me [Mary Jo] that he would have to do what he had to do, because everybody had bills to pay, even if he has to take it out on Ma and Pops[.]" (Tr. 168). Mary Jo said Appellant was referring to her and Johnny with the "Ma and Pops" reference. (Tr. 168). She believed Appellant was threatening to shoot them. (Tr. 168). While she did not see a gun on Appellant's person, Mary Jo stated that Appellant was "holding himself" and that he appeared to have something inside of his pants that she believed to be a gun. (Tr. 168-169).

{¶16} Appellant told Mary Jo to write down his phone number and told her his name was "Slim." (Tr. 170). Appellant told Mary Jo that he would be back to find Taralyn. (Tr. 173). At no point did Mary Jo or Susie Jo ask Appellant and the others to leave. (Tr.

184). And while Appellant was talking to Mary Jo, the other man was playing with Mary Jo's dog. (Tr. 186-187). Appellant, Legacy, and the other man then left Mary Jo's apartment on their own. (Tr. 173). Mary Jo watched the three leave in a dark blue car with a red license plate and then called the police to make a report. (Tr. 173-174).

{¶17} Two days later, Mary Jo looked out from her window and saw Appellant, Legacy, and another woman walking up the sidewalk toward her apartment. (Tr. 176). She called 911. (Tr. 177). The police responded. (Tr. 177). Mary Jo later identified Appellant. (Tr. 178).

{¶18} Susie Jo was the next witness. Susie Jo testified that on April 11, 2022, she heard a knock on the door. (Tr. 192). She stated that Legacy was at the door. (Tr. 192). Susie Jo knew Legacy because Legacy had been a friend of her sister, Taralyn. (Tr. 193).

{¶19} Susie Jo described the entrance to the apartment. She stated that to enter, a person would walk up a set of steps to reach a doorway that leads to a small area where there are doors to two apartments. (Tr. 193). The door to her apartment was to the left and it had a window on it so that she could see who was knocking at the door. (Tr. 194).

{¶20} Susie Jo stated that when she looked out the window on the door, she could only see Legacy standing there. (Tr. 194). When she opened the door to let Legacy in, two men whom she did not know, followed Legacy into the apartment. (Tr. 194-195). She identified Appellant as one of those two men. (Tr. 195). Susie Jo stated that Appellant then began looking around the apartment for Taralyn. (Tr. 196). Susie Jo woke up Mary Jo to tell her what was going on. (Tr. 196). Mary Jo told Appellant Taralyn was not home and Appellant told her that Taralyn had stolen drugs from him. (Tr. 198). Susie Jo then heard Appellant threaten to harm Mary Jo and Johnny. (Tr. 198). And while Susie Jo did not see a weapon, she said that it looked like Appellant was holding a concealed gun from the outline that she saw. (Tr. 199).

{¶21} Salem Police Officer Michael Garber responded to Mary Jo's 911 call along with other officers. Officer Garber observed Appellant standing near the driver's side door of the suspect vehicle and noticed Legacy and a juvenile walking away. (Tr. 213-215). Officer Garber looked inside the vehicle, which was registered to Appellant, and saw a firearm on the driver's side floor along with five rounds of ammunition. (Tr. 219).

**{¶22}** Salem Police Detective David Beeson was the State's final witness. Detective Beeson investigated this matter. As part of his investigation, the detective interviewed Susie Jo. According to Detective Beeson, Susie Jo reported to him that on the day in question, she heard a knock at her door. (Tr. 244-245). She looked out and recognized Legacy, so she opened the door. (Tr. 245). Detective Beeson stated: "It was advised [by Susie Jo] that, when they opened the door and Legacy came in, two males, one being Salah Edwards, had been concealed, not readily visible, when looking out the door. Upon Legacy Dubose coming in, these two males pushed their way in behind Legacy." (Tr. 245).

**{¶23}** The State did not assert that Appellant acted with force in this case. (State's Brief, p. 8). Thus, this case turns on whether the evidence can be construed to demonstrate that Appellant acted with stealth or deception.

**{¶24}** Appellant relies on the recent Ohio Supreme Court case of *State v. Bertram*, Slip Opinion 2023-Ohio-1456. In that case, Huff was outside at his home when he watched Bertram park his car on the road, near the end of Huff's driveway. Bertram then exited his car and started walking toward Huff's garage, which was open. Huff watched as Bertram walked into the garage smiling. Based on Bertram's smile and cavalier attitude during the encounter, Huff did not initially believe that Bertram was intending to steal from him. Once Bertram entered the garage, he picked up a leaf blower worth approximately $500 and then walked back to his car. Huff told him to stop but Bertram placed the leaf blower into the car and drove away. A jury convicted Bertram of burglary.

**{¶25}** On appeal, Bertram argued that there was insufficient evidence to support his burglary conviction because the State had failed to prove that he used force, stealth, or deception to enter Huff's open garage. *Id.* at ¶ 6. The Fourth District rejected this argument reasoning that Huff's testimony showed that Bertram's "attitude and demeanor" had deceived Huff into believing that Bertram was not intending to trespass into the garage and steal the leaf blower. *Id.* The appellate court further opined Bertram's conduct could be construed as sly behavior in an attempt to avoid making Huff think that he intended to steal from his garage. *Id.* Thus, the court affirmed Bertram's conviction.

**{¶26}** The Ohio Supreme Court accepted Bertram's appeal to consider the following proposition: "To prove trespass by stealth or deception in a burglary case, the

state must show that the trespasser actively avoided discovery or used deceptive conduct to gain entrance to the structure." *Id.* at ¶ 7.

{¶27} Bertram argued that while the evidence demonstrated that he trespassed onto Huff's property with the purpose to commit a criminal offense, there was no evidence that he accomplished the trespass by stealth or deception as is required by the burglary statute, given that force was not asserted. *Id.* at ¶ 10. The Supreme Court agreed. It reasoned:

> The court of appeals used the definition of "deception" provided in R.C. 2913.01(A). 2022-Ohio-2488 at ¶ 25. That definition states:
>
> "Deception" means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.
>
> "Stealth" is not defined in the Revised Code, so we consider its plain and ordinary meaning. In determining the plain and ordinary meaning of a word, courts may look to dictionary definitions of the word as well as the "meaning that the word[ ] ha[s] acquired when * * * used in case law." *Rancho Cincinnati Rivers, L.L.C. v. Warren Cty. Bd. of Revision*, 165 Ohio St.3d 227, 2021-Ohio-2798, 177 N.E.3d 256, ¶ 21.
>
> Merriam-Webster defines "stealth" as "intended not to attract attention." *Merriam-Webster's Collegiate Dictionary* 1221 (11th Ed.2003). And "stealth" has been defined in caselaw as " 'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.' " *State v. Ward*, 85 Ohio App.3d 537, 540, 620 N.E.2d 168 (3d Dist.1993), quoting *State v. Lane*, 50 Ohio App.2d 41, 47, 361 N.E.2d 535, 540 (10th Dist.1976). The court of appeals used this caselaw definition, 2022-Ohio-2488 at ¶ 26, and that definition has not been disputed here.

The state asserts that Bertram's "cavalier attitude" and "sly behavior" were deceptive conduct intended to mask his intention to steal the leaf blower from Huff's garage and that the evidence satisfied the element of "stealth" or "deception." But the state's interpretation of these words is contrary to the statutory definition and the plain meanings of the words.

Here, the evidence utterly failed to establish that during his trespass, Bertram engaged in any secret, sly, or clandestine conduct. Bertram did not act to avoid his discovery or to reduce the chance of his being noticed. Nor did Bertram deceive, mislead, lie to, or trick Huff into granting him entry into the garage.

(Footnote omitted); *Id.* at ¶ 12-16.

{¶28} This case is distinguishable from *Bertram*. Bertram walked right into Huff's open garage while looking at Huff and smiling. There was nothing deceptive or stealthy in his conduct. Appellant, on the other hand, went to Mary Jo's and Susie Jo's apartment with Legacy, a woman they both knew. He then stood behind Legacy to conceal himself when she knocked on the locked door. When Susie Jo looked out the window to see who was knocking, she saw only Legacy so she opened the door. Appellant then entered the apartment behind Legacy. This conduct demonstrates that Appellant used deceptive conduct or a sly act to enter the apartment. Construing this evidence in the light most favorable to the State, as we are required to do in a sufficiency of the evidence challenge, the evidence can be viewed to support the element of stealth or deception.

{¶29} Accordingly, Appellant's sole assignment of error is without merit and is overruled.

{¶30} For the reasons stated above, the trial court's judgment is hereby affirmed.


Robb, J., concurs.

D'Apolito, P.J., concurs.


Case No. 23 CO 0014

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**